[No. D049852. Fourth Dist., Div. One. June 19, 2007.]

BRYAN D. SMITH, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Steven J. Carroll, Public Defender, Matthew Braner and Gary Gibson, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Bonnie M. Dumanis, District Attorney, Catherine Stephenson, Chief Assistant District Attorney, Craig E. Fisher and Daniel L. Rodriguez, Deputy District Attorneys, for Real Party in Interest.

OPINION

**McDONALD, J.**—Defendant Bryan D. Smith filed a petition for writ of mandate challenging the trial court's order denying his motion to preclude real party in interest San Diego County District Attorney's Office (the People) from participating in the discovery proceedings he instituted to obtain information from the San Diego County Superior Court (the Jury Commissioner) on the jury selection system. Smith contends that under *Alford v. Superior Court* (2003) 29 Cal.4th 1033 [130 Cal.Rptr.2d 672, 63 P.3d 228] (*Alford*) the People do not have standing to participate in his third party discovery efforts. He further contends the People do not have a right to receive copies of documents and other information he may obtain from the Jury Commissioner as a result of his discovery efforts.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2005 an information was filed by the People charging Smith with murder (Pen. Code, § 187, subd. (a)) and alleging special circumstances in the commission of that murder (Pen. Code, § 190.2).

In investigating whether to challenge the composition of the jury venire for his trial, Smith apparently filed a motion for discovery of jury selection information from the Jury Commissioner.[1] Smith also filed a memorandum

---

[1] Smith did not attach a copy of that motion to his petition. However, the People admit Smith's allegation that he filed that motion. It appears Smith subsequently served a subpoena duces tecum on the Jury Commissioner for discovery of documents regarding the jury selection system. That subpoena apparently was served in response to the Jury Commissioner's opposition to Smith's discovery motion, in which the Jury Commissioner argued a motion to compel discovery under Penal Code section 1054 et seq. is an inappropriate vehicle to obtain discovery of documents from a third party.

that in effect moved to preclude the People from participating in the proceedings regarding that motion and his other third party discovery efforts. The People filed papers opposing Smith's motion, arguing they had standing to challenge Smith's third party discovery motion. Smith's reply to the People's opposition argued that under *Alford, supra,* 29 Cal.4th 1033, the People do not have standing to participate in his third party discovery efforts.

On November 7, 2006, the trial court held a hearing on Smith's pretrial motions, including his motion to exclude the People from participating in his discovery proceedings to obtain jury selection information from the Jury Commissioner. After hearing arguments of counsel, the trial court denied Smith's motion to exclude the People from participating in his third party discovery efforts. In response to Smith's inquiry, the trial court also stated the People would be entitled to receive copies of all documents and other information Smith may receive from the Jury Commissioner in response to his discovery efforts.

On November 28, Smith filed the instant petition. On December 7, we issued an order summarily denying the petition. On December 15, Smith filed a petition for review of our order with the California Supreme Court. On February 21, 2007, the California Supreme Court granted Smith's petition for review and transferred the matter to us with directions to vacate our order denying Smith's petition for writ of mandate and to issue an order to show cause why the relief sought in that petition should not be granted. On February 28, we issued an order to show cause why the relief requested in Smith's petition should not be granted.[2] On March 15, the People filed a response to the petition. On March 27, Smith filed a traverse.[3]

## DISCUSSION

### I

#### Alford

In *Alford, supra,* 29 Cal.4th 1033, the Supreme Court, in a lead opinion authored by Justice Werdegar and joined by Justices George and Kennard,

---

[2] Because our February 28 order did not expressly vacate our December 7, 2006 order summarily denying the petition, we subsequently issued an order vacating that December 7 order.

[3] Smith applied for relief from his failure to timely file his traverse, citing his counsel's mental error in filing the traverse one day late. We grant Smith's request for relief and consider his traverse as timely filed.

addressed the issue of whether the prosecution had standing to participate in the defendants' *Pitchess*[4] motion for discovery of past complaints made to the San Diego Police Department regarding any incidents of dishonesty, excessive force, unnecessary violence, racist remarks, or similar misconduct by their arresting officers. (*Alford, supra,* 29 Cal.4th at p. 1036.) After the trial court denied that *Pitchess* motion, we granted the defendants' petition for a writ, directing the trial court to issue an order granting the requested disclosure (subject to a protective order) and allowing the prosecution to participate in the *Pitchess* proceeding and to receive the information disclosed. (*Alford, supra,* at p. 1037.) Defendant Maurice Alford petitioned for review by the California Supreme Court. (*Ibid.*) The Supreme Court granted review, "limited to the questions whether the protective order required by [Evidence Code] section 1045[, subdivision] (e) must restrict use of *Pitchess* information to the proceeding in which disclosure is sought, and whether the prosecutor has standing to be heard on the *Pitchess* motion and to obtain information disclosed to the defense pursuant to such motion." (*Alford, supra,* at p. 1037, fn. omitted.)

Part C of the lead opinion in *Alford* addressed the prosecution's argument that it had standing to be heard in *Pitchess* proceedings and to receive material ordered disclosed.[5] (*Alford, supra,* 29 Cal.4th at pp. 1043–1044.) It first noted that the statutory provisions setting forth the notice and hearing requirements for *Pitchess* motions (i.e., Code Civ. Proc., § 1005, subds. (a)(6), (b)) were silent regarding whether notice must be given to the prosecution (in addition to the notice expressly required to be given to the governmental agency holding the requested records). (*Alford,* at p. 1044.) It also noted Penal Code section 684 and Evidence Code section 1043, subdivision (a) were also silent regarding notice to the prosecution. (*Alford,* at p. 1044.)

Addressing the prosecution's argument that state constitutional due process (i.e., Cal. Const., art. I, § 29) entitled it to notice, presence, and a right to be heard at *Pitchess* hearings, *Alford* stated that "as a party to the underlying criminal proceeding, the district attorney under general due process principles is entitled to *notice of the date and place of the hearing* on a defense *Pitchess*

---

[4] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

[5] In a concurring and dissenting opinion, Justice Moreno joined in part C of the lead opinion, concurring with the lead opinion's discussion regarding whether the prosecution had standing to participate in *Pitchess* discovery proceedings and to receive materials discovered by the defendant. (*Alford, supra,* 29 Cal.4th at p. 1057 (conc. & dis. opn. of Moreno, J.).) With the addition of Justice Moreno's concurrence, a total of four (out of seven) justices supported part C of the lead opinion.

motion."[6] (*Alford, supra*, 29 Cal.4th at p. 1044, italics added.) However, the court rejected the prosecution's argument it was entitled to participate in a *Pitchess* hearing and receive any disclosed *Pitchess* information, stating the district attorney "overstates the extent of his legitimate interest in *what is essentially a third party discovery proceeding*." (*Alford*, at p. 1045, italics added.) *Alford* explained: "In a *Pitchess* hearing, the district attorney prosecuting the underlying criminal case represents neither the custodian of records nor their subject, and thus has no direct stake in the outcome." (*Id.* at p. 1045.) The court cited *Bullen v. Superior Court* (1988) 204 Cal.App.3d 22 [251 Cal.Rptr. 32] as "[i]nstructive" on that issue. (*Alford*, at p. 1045.) In *Bullen*, the court held the district attorney must be recused from proceedings challenging the trial court's order allowing the defendant access to a third party's home for discovery purposes, concluding the district attorney in that case had no statutory authority to represent a third party in discovery proceedings in a criminal case. (*Bullen*, at p. 25; *Alford*, at p. 1045.) *Alford* stated: "Arguably, for a prosecutor to actively challenge the sufficiency of a *Pitchess* movant's good cause showing is to advance the interests of the third party custodian and police officer." (*Alford*, at p. 1045.)

*Alford* also rejected the prosecution's argument that because a successful *Pitchess* motion "may yield information leading to evidence admissible in the underlying criminal proceeding," it had an interest in a *Pitchess* motion "meriting the full panoply of due process rights." (*Alford, supra*, 29 Cal.4th at p. 1045.) The court noted that "the reciprocal discovery statutes enable the prosecution to prepare to meet the defense case whenever defense receipt of *Pitchess* disclosure ripens into the intent to call a witness. (See Pen. Code, § 1054.3.)" (*Id.* at p. 1045.)

*Alford* compared a *Pitchess* motion to other methods of third party discovery, stating: "The *Pitchess* procedure is, as noted, in essence a special instance of third party discovery. Another such procedure is reflected in Penal Code sections 1326 and 1327, which empower either party in a criminal case to serve a subpoena duces tecum requiring the person or entity in possession of the materials sought to produce the information in court for the party's inspection. [Citations.] In such case, if the custodian of records objects to disclosure of the information sought, the party seeking the information must make a plausible justification or a good cause showing of need therefor. Significantly in this context, the defense is not required, on pain of revealing

---

[6] Nevertheless, *Alford* noted: "We are not suggesting that such notice include the affidavits and/or any other information in support of the *Pitchess* motion. [Citation.]" (*Alford, supra*, 29 Cal.4th at p. 1045, fn. 5.)

its possible strategies and work product, to provide the prosecution with notice of its theories of relevancy of the materials sought, but instead may make an offer of proof at an in camera hearing. [Citation.] A defendant's Sixth Amendment right to the assistance of counsel in the preparation of a case for trial likewise encompasses the assistance of, and confidential communication with, experts in preparing a defense. [Citation.] The right logically extends to the opportunity to investigate and develop evidence generally, such as impeachment evidence of the kind at issue here." (*Alford, supra*, 29 Cal.4th at pp. 1045–1046.)

Finally, *Alford* concluded there was no statutory authority "to compel the defense or the trial court to share with the prosecution the fruits of a successful *Pitchess* motion. The prosecution is entitled to discovery from the defense only in accordance with Penal Code sections 1054.3 and 1054.7. [Citations.]" (*Alford, supra*, 29 Cal.4th at p. 1046.) The court noted the prosecution was free to file its own *Pitchess* disclosure motion "by complying with the procedure set forth in Evidence Code sections 1043 and 1045." (*Alford, supra*, 29 Cal.4th at p. 1046, fn. omitted.)[7] "Absent such compliance, . . . peace officer personnel records retain their confidentiality vis-a-vis the prosecution. [Citations.]" (*Alford, supra*, 29 Cal.4th at p. 1046, fn. omitted.)

■ Therefore, *Alford* held that although the prosecution is entitled to notice of the date and place of a hearing on a defense *Pitchess* motion, the prosecution is *not* entitled to participate in that hearing or to receive information obtained by the defense as a result of a successful *Pitchess* motion. (*Alford, supra*, 29 Cal.4th at pp. 1044–1046.)

## II

### *The People's Standing to Participate in the Proceedings*

Smith contends that because the principles set forth in *Alford* apply to his discovery efforts to obtain information on the jury selection system from the

---

[7] *Alford* noted: "Because we conclude the prosecution has no automatic entitlement to defense-initiated *Pitchess* discovery, we do not address petitioner's further argument that receipt of such information would create an obligation, pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194], to provide the defense, in future cases where the officer in question is a material witness, with whatever disclosed *Pitchess* information bears on the officer's credibility or is significantly exculpatory. To the extent a prosecution-initiated *Pitchess* motion yields disclosure of such information, the prosecutor's obligations, as in any case, are governed by constitutional requirements in the first instance. [Citation.]" (*Alford, supra*, 29 Cal.4th at p. 1046, fn. 6.)

Jury Commissioner, the trial court erred by denying his motion to exclude the People from participating in his third party discovery efforts.

## A

■ Alford concluded the prosecution did not have a right to participate in the defendant's *Pitchess* discovery proceedings because the prosecution did not represent the third party from whom that discovery was sought and there was no statutory or constitutional authority supporting the prosecution's purported right to participate in those proceedings. (*Alford, supra*, 29 Cal.4th at pp. 1044–1046.) Although this case does not involve *Pitchess* discovery proceedings, we conclude the fundamental reasoning underlying *Alford* applies in this case to exclude the People from participating in proceedings on Smith's efforts to obtain third party discovery from the Jury Commissioner. Importantly, *Alford*'s reasoning was based, in large part, on its comparison of defense *Pitchess* discovery to the general statutory provisions for defense third party discovery. *Alford* stated that a *Pitchess* discovery proceeding "*is essentially a third party discovery proceeding.*" (*Alford*, at p. 1045, italics added.) The court restated its view: "The *Pitchess* procedure is, as noted, in essence a special instance of third party discovery." (*Id.* at p. 1045.) In so doing, it referred to the general method of obtaining third party discovery under "Penal Code sections 1326 and 1327, which empower either party in a criminal case to serve a subpoena duces tecum requiring the person or entity in possession of the materials sought to produce the information in court for the party's inspection." (*Ibid.*) The court stated that because the prosecution does not represent either the custodian of records or their subject in a defense *Pitchess* proceeding, the prosecution "has no direct stake in the outcome." (*Alford*, at p. 1045.)

We conclude Smith's third party discovery efforts in this case are analogous to both the defense *Pitchess* discovery directly involved in *Alford* and other defense third party discovery discussed in *Alford* (e.g., subpoenas duces tecum under Pen. Code, §§ 1326, 1327). (*Alford, supra*, 29 Cal.4th at p. 1045.) Smith apparently has served a subpoena duces tecum on the Jury Commissioner seeking documents on the jury selection system. Because that subpoena presumably was issued and served pursuant to Penal Code sections 1326 and 1327, that third party discovery effort by Smith appears to be covered by *Alford*'s reasoning because the court expressly referenced those statutes. (*Alford*, at p. 1045.)

■ Penal Code sections 1326 and 1327 and Evidence Code section 1560 provide a procedure for discovery by a defendant in a criminal case of books and records of a third party who is not a party to the criminal proceeding. This procedure includes specification of the form of subpoena (Pen. Code, § 1327) and the method of complying with a subpoena duces tecum requiring the production of documents. The records are to be delivered to the court, which may order an in camera hearing to determine if the records should be released to the defendant. (Pen. Code, § 1326, subd. (c).) However, the court may not order the documents disclosed to the prosecution unless the defendant intends to introduce them as evidence in the trial. (Pen. Code, §§ 1326, subd. (c), 1054.3; see generally Pipes & Gagen, Cal. Criminal Discovery (2006 supp.) Third-Party Discovery, §§ 9:10–9:15, pp. 262–265.) There is no provision in this third party discovery procedure for participation by the prosecution.

■ As in *Alford*, here the People do not cite, nor have we found, any statutory or constitutional authority supporting their purported right to participate in Smith's third party discovery efforts. (*Alford, supra*, 29 Cal.4th at pp. 1044–1045.) Although the People have a constitutional due process right to be heard on matters affecting the People's rights, that right gives the People in this case the right to *notice* of the date and place of the proceedings on Smith's third party discovery efforts. (*Id.* at p. 1044.) The People's rights in this case are not affected by Smith's efforts to obtain discovery of documents or other information from the Jury Commissioner on the jury selection system. (*Ibid.*)

In the event Smith obtains discovery of documents and files a motion challenging the Jury Commissioner's jury selection system (e.g., pursuant to *Duren v. Missouri* (1979) 439 U.S. 357 [58 L.Ed.2d 579, 99 S.Ct. 664] for underrepresentation of a cognizable group due to systematic exclusion), at that point the People's rights will be affected and they will be entitled to participate in that future proceeding. Furthermore, at that point the People's rights to reciprocal discovery (e.g., Pen. Code, § 1054.3) will be triggered, requiring Smith to then provide them with certain documents and other information regarding his motion challenging the jury selection system. (Cf. *Alford, supra*, at p. 1045.) The fact the People may have a right to participate in any future motion filed by Smith challenging the jury selection system does *not* logically require that they also have a right to participate in the instant proceedings on Smith's third party discovery efforts that are preliminary to any decision by Smith to file that future motion. The People's involvement in the proceedings on Smith's third party discovery efforts in

this case is unwarranted, unsupported by statutory or constitutional authority, and premature.

B

■ We are not persuaded by the People's argument that *Alford*'s reasoning should be limited to defense *Pitchess* motions and should not apply to other forms of defense third party discovery in criminal actions, including Smith's third party discovery efforts in this case. *Alford* does not contain any language expressly limiting its reasoning to hearings on defense *Pitchess* motions. Rather, *Alford* includes language supporting our conclusion that its reasoning generally applies to all forms of third party discovery by defendants in criminal cases.

Furthermore, although the confidentiality of peace officers' information underlies the strict procedures for *Pitchess* motions, that confidentiality aspect was *not* a fundamental reason cited by *Alford* in concluding the prosecution does not have standing to participate in a hearing on a defense *Pitchess* motion. Rather, the fundamental reasons for *Alford*'s holding were that the prosecution did not represent the third party (i.e., the custodian of records) and no statutory or constitutional authority supported the prosecution's purported right to participate in hearings on a defense *Pitchess* motion.[8] (*Alford, supra,* 29 Cal.4th at pp. 1044–1046.) Accordingly, assuming Smith's efforts to discover jury selection system information from the Jury Commissioner do not raise any confidentiality concerns, *Alford*'s reasoning nevertheless applies to this case.

Similarly, the People argue *Alford*'s reasoning does not apply to this case because *Alford* discussed the defendant's Sixth Amendment right to assistance of counsel and his related need to protect the confidentiality of possible defense strategies. The People argue that because Smith's efforts to discover information on the jury selection system could not possibly involve any confidential defense strategy, *Alford* should not apply to this case. Assuming arguendo Smith's third party discovery efforts in this case could not involve (or indirectly reveal) any confidential defense strategy, because the confidentiality of possible defense strategies was *not* a fundamental reason cited by

---

[8] The People concede they do not represent the Jury Commissioner in opposing Smith's discovery efforts. Rather, they argue they have an interest independent from the Jury Commissioner in the proceedings on Smith's third party discovery efforts. We address that argument below.

*Alford* in concluding the prosecution did not have standing to participate in a hearing on a defense *Pitchess* motion, we conclude *Alford*'s fundamental reasoning should apply to this case.[9]

Finally, the People argue that because they have an independent interest in protecting the integrity of the jury system, they should be allowed to participate in the proceedings on Smith's third party discovery efforts in this case. However, assuming arguendo the People have such an independent interest, they do not persuade us that such interest entitles them to participate in proceedings on Smith's third party discovery efforts. Rather, it appears that any such interest of the People in protecting the integrity of the jury system would be adequately protected by their participation in proceedings on any future motion that Smith may file challenging the jury selection system. Because the instant proceedings involve only Smith's efforts to discover documents and other information as part of his investigation of the jury selection system that is preliminary to any future motion challenging that system, it would be premature to allow the People to participate in the instant proceedings. Furthermore, although the People argue they need to participate in the instant proceedings to ensure Smith meets his evidentiary burden for discovery of information on the jury selection system, they do not persuade us the Jury Commissioner and trial court together will be unable to ensure Smith meets that burden.

## C

We conclude *Alford*'s reasoning applies to this case. Accordingly, the trial court erred by denying Smith's motion to preclude the People from participating in the proceedings on his efforts to obtain discovery from the Jury Commissioner on the jury selection system.

## III

### *The People's Right to Receive Discovery*

Smith contends the trial court also erred by concluding the People would have a right to receive copies of documents and other information he may obtain from the Jury Commissioner as a result of his discovery efforts. At the

---

[9] In any event, although Smith's third party discovery efforts in this case are ostensibly only to investigate whether there is a basis for a possible challenge to the jury selection system, it nevertheless seems possible that his defense theories and strategies at trial could be revealed in the proceedings on his discovery efforts (e.g., in motion papers or during argument by counsel). Therefore, we do *not* accept the People's argument that confidential defense strategies could *never* be revealed during such proceedings.

November 7, 2006 hearing, the trial court stated the People *would* be entitled to receive copies of all documents and other information Smith *may* receive pursuant to his efforts to obtain discovery from the Jury Commissioner.

However, because the trial court did not order Smith (or the Jury Commissioner) to disclose to the People documents discovered by Smith, it appears the trial court did not make a final ruling on that issue, but rather gave only a tentative or prospective ruling of how it would rule on that future question. Accordingly, there is no existing order regarding which Smith may petition this court for writ of mandate relief. Furthermore, Smith's petition does not request any specific relief relating to that ruling by the trial court, apparently because Smith agrees that ruling was prospective. Smith's petition states: "Concededly, the trial court has yet to order the release of any discovery."

 Although we need not decide whether the trial court's tentative or prospective ruling is correct, we note that *Alford*'s reasoning on that issue should also apply to this case. *Alford* concluded there was no statutory authority "to compel the defense or the trial court to share with the prosecution the fruits of a successful *Pitchess* motion." (*Alford, supra,* 29 Cal.4th at p. 1046.) Likewise, in the circumstances of this case, we believe there is no statutory or other authority requiring Smith, the Jury Commissioner, or the trial court to share with the People the documents and other information that Smith may obtain through his third party discovery efforts in this case. We note Penal Code section 1326, subdivision (c) provides that "[w]hen a defendant [in a criminal case] has issued a subpoena to a person or entity that is not a party for the production of books, papers, documents, or records . . . the court may order an in camera hearing to determine whether . . . the defense is entitled to receive the documents. The court may not order the documents disclosed to the prosecution except as required by [Penal Code] Section 1054.3." Penal Code section 1054.3 requires disclosure by the defense in a criminal case to the prosecution only of evidence the defense intends to offer at the trial. In the event Smith files a future motion challenging the jury selection system, the People presumably at that hearing will be entitled to discovery of the information Smith intends to introduce at the hearing. We expect the trial court will apply *Alford*'s reasoning and Penal Code sections 1054.3 and 1326, subdivision (c) in deciding any future request by the People for receipt of documents and other information obtained by Smith in his third party discovery efforts in this case. (*Alford,* at p. 1046; *Teal v. Superior Court* (2004) 117 Cal.App.4th 488, 492 [11 Cal.Rptr.3d 784].)

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its November 7, 2006 order denying Smith's motion to preclude the People from participating in the proceedings on his motion to discover information from the Jury Commissioner and enter a new order granting that motion. This opinion is made final immediately as to this court. (Cal. Rules of Court, rule 8.264(b)(3).)

Nares, Acting P. J., and Haller, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied August 29, 2007, S154062. Baxter, J., and Chin, J., were of the opinion that the petition should be granted.