[No. S149123. May 12, 2008.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HUMBERTO S., Real Party in Interest.

738

**COUNSEL**

Steve Cooley, District Attorney, Lael R. Rubin, William Woods and Tracey Lopez, Deputy District Attorneys, for Petitioner.

Edmund G. Brown, Jr., Attorney General, Donald E. de Nicola, Deputy State Solicitor General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, and Kristofer Jorstad, Deputy Attorney General, as Amici Curiae on behalf of Petitioner.

Michael A. Ramos, District Attorney (San Bernardino) and Grover D. Merritt, Lead Deputy District Attorney, for California District Attorneys Association as Amicus Curiae on behalf of Petitioner.

Kent S. Scheidegger and L. Douglas Pipes for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Petitioner.

Loeb & Loeb, Karen R. Thorland and Anne W. Braveman for Rape Treatment Center at Santa Monica-UCLA Medical Center and Orthopaedic Hospital as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Michael P. Judge, Public Defender, Albert J. Menaster, Kelly O'Brien and Maureen Pacheco, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**WERDEGAR, J.**—When, if ever, does a prosecutor's advocacy of third party interests in the course of a criminal discovery dispute rise to the level of a conflict of interest justifying recusal? Here, the trial court concluded that a prosecutor who advocates a position of benefit to a third party in a discovery dispute effectively assumes representation of that party and thus has a conflict supporting recusal.

In two companion cases issued today, we reaffirm that the standard of review for assessing a trial court determination concerning prosecutorial recusal is abuse of discretion. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–713 [76 Cal.Rptr.3d 250, 183 P.3d 579]; *Hollywood v. Superior Court* (2008) 43 Cal.4th 721, 727–729 [76 Cal. Rptr.3d 264, 182 P.3d 590].) This case demonstrates that that standard should not be interpreted as insulating trial court recusal orders from meaningful appellate review. Where the trial court's decision rests on an error of law, as it does here, the trial court abuses its discretion. As the Court of Appeal affirmed the recusal order, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 27, 2005, minor Humberto S. was charged in a wardship petition (Welf. & Inst. Code, § 602) with violating Penal Code section 288.5, subdivision (a) (continuous sexual abuse of a child under the age of 14). The petition alleged he had sexually abused his eight-year-old niece, Samantha F.[1]

Pretrial, Humberto S.'s counsel issued separate third party subpoenas for Samantha's medical and psychotherapy records. (Pen. Code, § 1326; Evid. Code, § 1560, subd. (b).) The third party custodian of Samantha's medical records disclosed them directly to Humberto S.'s counsel, who opened them. The custodian of the psychotherapy records delivered them to the trial court and, on April 10, 2006, a referee temporarily presiding in lieu of the trial referee who had been assigned the matter directed the court clerk to provide the records, already opened, to defense counsel. Although Deputy District

---

[1] The molestations allegedly began around the time of Samantha's seventh birthday and continued until shortly after her eighth birthday, when she first reported them to her mother. Humberto S. was approximately 14 and 15 years old during this period.

Attorney Timothy Hu appeared for the People at the April 10 hearing, the disclosure was done ex parte, and it appears he did not learn then of the records' release.

On May 11, 2006, Humberto S.'s counsel provided copies of Samantha's medical and psychotherapy records to the People. The People, represented this time by Deputy District Attorney Kenneth Chiu, objected to Humberto S.'s possession of the records on the grounds that the proper subpoena procedure had not been followed and that *People v. Hammon* (1997) 15 Cal.4th 1117 [65 Cal.Rptr.2d 1, 938 P.2d 986] limited the defense's right to pretrial access to the privileged records. The court ordered Humberto S.'s counsel to turn all records over to the court, ordered that the records be resubpoenaed, and continued the matter to afford the court time to review *Hammon* and the relevant procedural rules.

That afternoon, Humberto S.'s counsel represented in open court that she had spoken separately with both Samantha's mother and father and that each had independently consented to disclosure.[2] As the People still challenged the propriety of the disclosures, the trial court set a further hearing for May 15, ordered the People to secure the presence of both parents at that hearing, and asked each side to submit written points and authorities.

On May 15, 2006, the defense filed a motion in support of disclosure, and the People filed a motion to quash the subpoenas, claiming that Humberto S. had failed to comply with Penal Code section 1326 and Evidence Code section 1560, that the records were privileged, that the privilege had not been waived by prior production of the records, and that the court could not authorize disclosure absent a *Hammon* hearing (*People v. Hammon, supra,* 15 Cal.4th 1117), which in any event could not be held pretrial. Humberto S. objected repeatedly to the People's participation in the hearing, but in each instance the trial court overruled the objection. Samantha's mother testified she had *not* consented to the People's or Humberto S.'s access to the records. She further testified that she and Samantha's father had joint and equal rights to make decisions about Samantha's treatment and care. Samantha's father did not appear. The trial court tentatively determined that the original April 10 disclosure had violated *Hammon,* but was uncertain whether consent by either parent would suffice to waive the privilege and permit redisclosure, and if so whether Samantha's father had consented. Accordingly, it continued the matter to hear from Samantha's father.

At a further hearing on May 18, 2006, Samantha's father appeared and testified that when Humberto S.'s counsel called him on May 11, he

---

[2] Samantha's parents never married and were separated, but they shared custody of Samantha. Samantha's mother was the primary caretaker. As noted, Samantha is Humberto S.'s niece; her father is Humberto S.'s brother.

contacted Samantha's mother, who said she wanted to speak to the prosecutor; she later called back and told him she had done so and "everything was okay." On that basis, Samantha's father had consented to disclosing the records to defense counsel. He further testified that under his custody understanding with Samantha's mother, both parents had the right to seek medical treatment for Samantha, and he wanted the records released even over her mother's objection.

The court tentatively ruled that Samantha's father's in-court consent was sufficient to authorize disclosure of her records. Deputy District Attorney Chiu objected, arguing that Samantha's mother's consent was also necessary. After hearing further argument, the trial court disagreed, holding that under Family Code section 3083 either parent's consent was generally sufficient to waive the privilege.[3] However, it continued the matter for one day so the People could determine whether a family court order existed that might specifically require joint consent.

On May 19, 2006, the People filed a supplemental motion to quash the subpoenas, alleging that just the previous day Samantha's therapist had submitted with Samantha's resubpoenaed records a written objection to their release on the ground the release would be harmful to Samantha's continued treatment, and the father's consent could not override that assertion of the privilege. (See Health & Saf. Code, § 123115, subd. (a)(2); *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 826–829 [269 Cal.Rptr. 624] [in a dependency action, holding predecessor to Health & Saf. Code, § 123115 barred conflicted father from accessing minor's psychotherapy records].)[4] At the continued hearing, Chiu reported to the court that no family court order existed, but argued the presumptions of Family Code section 3083—that one parent's consent ordinarily sufficed—should not control. The court agreed the statute was not controlling, but adhered to its tentative ruling. Chiu then asked the court to appoint a guardian ad litem to assert Samantha's privilege, in light of the parents' divided views and the possibility one or both had a conflict. (See Code Civ. Proc., § 373.) The court declined, treating the request as untimely.

The matter was continued to a final hearing on May 23, 2006, when the court denied the People's supplemental motion. After a recess, on the request of another member of the prosecutor's office, Lydia Boldin, the court stayed the release of the records pending appellate review. On June 20, the Court of

---

[3] Under Family Code section 3083, a court entering a joint custody order must specify the circumstances in which joint parental consent is required; in all other circumstances, the consent of one parent is sufficient.

[4] Health and Safety Code section 123115 identifies circumstances in which a health care provider may preclude access to a minor patient's records.

Appeal denied the People's writ petition, and thereafter the disputed records were released to Humberto S.

Humberto S. thereafter moved to disqualify the Los Angeles County District Attorney's Office pursuant to Penal Code section 1424, contending that in opposing the disclosure motions it had effectively represented three different third parties (Samantha F., her mother, and the custodian of records for Samantha's psychiatrist) and thus had created an irremediable conflict of interest. The trial court partially granted the motion, holding Humberto S. had shown "that a conflict of interest exists that is so great as to make a fair trial unlikely. In this case, the conflict arose when the prosecution sought to represent third-party interests in a juvenile delinquency proceeding. Thus, the court grants the motion as to the recusal of Deputy District Attorney Ken Chiu. [¶] Second, since the supervisors of the Compton District Attorney's office[] were involved in the prosecution's case against Humberto [S.] and sanctioned the third-party representation it is likely that the conflict has spread to other deputy district attorneys." On that basis, it also recused "the supervising deputy district attorneys involved in the [Humberto S.] matter . . . along with anyone who has discussed the case, as well as the attorneys that the supervisors direct or directed, evaluate and promote because they are subject to the same consideration[s] barring the supervising attorneys." The effect of these rulings was to recuse the assigned trial prosecutor, Timothy Hu, and an indeterminate but potentially significant number of additional attorneys. However, the trial court denied Humberto S.'s request that the entire district attorney's office be recused, concluding such wholesale recusal had not been shown to be necessary.

The People sought writ review and a stay. After issuing an order to show cause and staying the proceedings, the Court of Appeal denied the petition and lifted the stay. The Court of Appeal concluded, "the test to be applied here, in reviewing the order of the trial court, remains: Is there a conflict of interest; and if so, is that conflict so severe as to disqualify the district attorney from acting?" The Court of Appeal acknowledged the factual scenario here was different than in other recusal cases; the district attorney was not financially entangled with the victim, had no personal connection to any victim or witness, and had no personal gain at stake. Nevertheless, it held, "the actions of the deputy district attorneys involved in the motion practice in the trial court demonstrated a one-sided perspective on the role of the prosecution and an apparent attempt to represent the victim's interest in protecting her privacy that exceeded the exercise of balanced discretion necessary to ensure a just and fair trial. The motion practice here evidenced a continuous effort, based on constantly shifting grounds, which appeared designed not to adhere to the statutory procedures to preserve the integrity of the process, but instead to block minor's counsel from access to records potentially critical to the defense. Had the prosecutor's office ceased its

efforts after [Samantha's father] consented in open court, after examination by the court, to the disclosure, the record might not have supported the order of recusal. But the efforts to block access to the records did not cease at that point; instead continuing assertion of new grounds caused delay and additional hearings, impeding defense preparation for trial. This record reveals substantial evidence supporting the trial court's finding, and demonstrates no abuse of discretion." (Fns. omitted.)

We granted review to consider the application of the recusal statute to situations involving the alleged advocacy of third party interests.

DISCUSSION

### I.  Standards for a Motion to Recuse

■ As we have reiterated today in *Haraguchi v. Superior Court, supra,* 43 Cal.4th at page 711, Penal Code "[s]ection 1424 sets out the standard governing motions to recuse a prosecutor: such a motion 'may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial.' (*Id.,* subd. (a)(1).) The statute 'articulates a two-part test: "(i) is there a conflict of interest?; and (ii) is the conflict so severe as to disqualify the district attorney from acting?" ' (*Hambarian v. Superior Court* (2002) 27 Cal.4th 826, 833 [118 Cal.Rptr.2d 725, 44 P.3d 102], quoting *People v. Eubanks*[ (1996)] 14 Cal.4th [580,] 594 [59 Cal.Rptr.2d 200, 927 P.2d 310].)" ■ We also reaffirmed the general rule that motions to recuse a prosecutor are reviewed for abuse of discretion. Accordingly, we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious. (*Haraguchi,* at pp. 711–712.) Critical to the resolution of this case, we note that when a trial court's decision rests on an error of law, that decision is an abuse of discretion. (See *ibid.* & fn. 4; *Eubanks,* at p. 595; *People v. Neely* (1999) 70 Cal.App.4th 767, 775–776 [82 Cal.Rptr.2d 886].)

### II.  Application

We consider whether the prosecutorial conduct reflected in the record supports the trial court's finding, and the Court of Appeal's affirmance, of a conflict sufficient to warrant recusal of various Los Angeles County prosecutors.

#### A.  The Court of Appeal's Rationale for Recusal: Obstruction

■ We begin with the unexceptionable proposition that the good faith assertion of legal argument, without more, does not establish a conflict.

"Zealous advocacy in pursuit of convictions forms an essential part of the prosecutor's proper duties and does not show the prosecutor's participation was improper." (*People v. Vasquez* (2006) 39 Cal.4th 47, 65 [45 Cal.Rptr.3d 372, 137 P.3d 199].) " 'In an adversary system, [prosecutors] are necessarily permitted to be zealous in their enforcement of the law.' (*Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 248 [64 L.Ed.2d 182, 100 S.Ct. 1610].) So long as their zeal remains within legal limits . . . the lawful execution of their duty does not establish as a matter of law that they have surrendered their independence and impartiality." (*Hambarian v. Superior Court, supra,* 27 Cal.4th at p. 843.) The same is true of their involvement in discovery disputes, which alone do not suggest a conflict. (*Vasquez,* at p. 65.)

Implicit in the Court of Appeal's decision is the conclusion that the prosecution stepped beyond permissible zealous advocacy by acting in bad faith to obstruct discovery and impair defense preparation. Humberto S. echoes this position. Although the persistent, bad faith use of litigation tactics lawful in and of themselves might in some circumstances evidence an underlying conflict that renders a fair trial unlikely and warrants recusal, that is not this case. The trial court made no finding of bad faith, nor did it rest its recusal order on any such basis.[5] To the contrary, it viewed the prosecution's objections as motivated by a desire to see the law followed, not a desire to obstruct discovery. As the record is susceptible of this conclusion, neither the Court of Appeal nor we may substitute our own assessment of the prosecutors' good or bad faith in seeking to prevent disclosure of Samantha's medical and psychotherapy records.[6]

■ The good faith assertion of nonfrivolous arguments is not a basis for recusal. Accordingly, we reject the Court of Appeal's conclusion that although the prosecution acted permissibly by initially challenging disclosure, it stepped over the line by persisting after Samantha's father—Humberto S.'s brother—consented to disclosure in open court. The Court of Appeal chastised the prosecution for creating delay, but less than a week passed between

---

[5] Of course, we do not suggest bad faith is a requirement to support recusal in general; it is not. (See *Hollywood v. Superior Court, supra,* 43 Cal.4th at p. 715 [recusal does not require a showing even of misconduct]; cf. *People v. Hoyos* (2007) 41 Cal.4th 872, 924, fn. 36 [63 Cal.Rptr.3d 1, 162 P.3d 528] ["Prosecutorial misconduct does not require a showing of bad faith."].) But it becomes a material consideration where, as here, the use of otherwise lawful litigation tactics is at issue.

[6] The merits of the original disclosure order are not before us, and we therefore express no opinion on the order's correctness or the ultimate validity of the prosecution's arguments against its entry. Suffice it to note that the trial court made no finding that the prosecution acted in bad faith or that any of the arguments it raised were frivolous.

Samantha's father's testimony and the trial court's order directing that the records be disclosed. To the extent the Court of Appeal's conclusion rested on the additional month of delay that resulted from the prosecution's declining to acquiesce in the trial court's ruling and instead seeking appellate review, we reject that basis as well. As defendants may not be punished for resort to the appellate process (*North Carolina v. Pearce* (1969) 395 U.S. 711, 723–725 [23 L.Ed.2d 656, 89 S.Ct. 2072]; *In re Bower* (1985) 38 Cal.3d 865, 873–876 [215 Cal.Rptr. 267, 700 P.2d 1269]), so prosecutors need not fear that the good faith availment of writ review will lead to their recusal.

### B. *The Trial Court's Rationale for Recusal: Representation of Third Parties*

The trial court based its recusal order on different grounds. It concluded that in this case a "conflict arose when the prosecution sought to represent third-party interests in a juvenile delinquency proceeding." The People contend this was error as a matter of law because they had independent standing to participate and to make arguments in the public interest, especially in a case where the state's compelling interest in minimizing the trauma to minor victims of sexual assault is implicated. Because they had standing, the People reason, they were not impermissibly representing third parties with interests potentially in conflict with the People's own interests. We agree that the People were allowed to participate in the third party discovery hearings, that in doing so they did not represent third party interests, and that the trial court therefore erred as matter of law in concluding they had represented such interests and had thereby created a conflict.

Generally, actions may have one of three legal statuses: they may be prohibited, permitted, or protected.[7] In *Alford v. Superior Court* (2003) 29 Cal.4th 1033 [130 Cal.Rptr.2d 672, 63 P.3d 228], for example, we considered whether the prosecution's participation in *Pitchess* hearings[8] was protected; that is, whether the People were entitled as a matter of enforceable right to be present and submit argument. The *Alford* dissent on this issue concluded the People were so entitled (*Alford*, at p. 1047 (conc. & dis. opn. of Baxter, J.)), while the majority concluded participation was permitted, but not protected (*id.* at pp. 1044–1046 (lead opn. of Werdegar, J.) [holding prosecution entitled only to "notice of the date and place of the hearing," but permitting it to respond to inquiries from the trial court]; *id.* at p. 1057 (conc. & dis. opn.

---

[7] This legal taxonomy is not exhaustive. One could, for example, add another category for actions that are "mandatory," in that the actor not only has a protected, enforceable right to take them, but is legally required to do so, i.e., prohibited from not doing so. For purposes of deciding this case, however, we need not further divide the universe of actions beyond the broad categories discussed in the text.

[8] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

of Moreno, J.) [joining lead opinion on this point]). We briefly noted but did not decide the same question with regard to third party subpoena hearings. (See *id.* at pp. 1045–1046 (lead opn. of Werdegar, J.); *id.* at pp. 1055–1056 (conc. & dis. opn. of Baxter, J.).)

Likewise, we need not decide here whether prosecutorial participation in third party subpoena hearings is permitted or protected; suffice it to say, as with *Pitchess* hearings, it is not prohibited. Critically, the governing statutes do not prohibit participation. Penal Code section 1326, which governs the issuance of third party subpoenas, does not speak to the role (if any) of opposing parties. It does, however, adopt the procedures of Evidence Code section 1560, subdivision (b) for delivery of subpoenaed documents. (See Pen. Code, § 1326, subds. (b), (c).) It also expressly precludes application of Evidence Code section 1560, subdivision (e) to criminal cases. (Pen. Code, § 1326, subd. (b).) Under Penal Code section 1102 and the principle of *expressio unius est exclusio alterius*, the remaining subdivisions of Evidence Code section 1560 apply in criminal cases. (See Pen. Code, § 1102 ["The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this Code."].)

In turn, Evidence Code section 1560, subdivision (d) contemplates at least some role for opposing parties, providing in relevant part: "Unless the parties to the proceeding otherwise agree, or unless the sealed envelope or wrapper is returned to a witness who is to appear personally, the copy of the records shall remain sealed and shall be opened only at the time of trial, deposition, or other hearing, upon the direction of the judge, officer, body, or tribunal conducting the proceeding, in the presence of all parties who have appeared in person or by counsel at the trial, deposition, or hearing." Evidence Code section 1560 thus suggests that, as with *Pitchess* hearings, and in accordance with the due process principles we recognized in *Alford v. Superior Court, supra,* 29 Cal.4th at page 1044, opposing parties have a right to notice and presence, but it leaves unanswered the degree of any further participation, neither guaranteeing nor prohibiting it. In the absence of a legislative determination that opposing parties are to be prohibited from any part in such proceedings, we may not adopt such a rule.

The Courts of Appeal that have considered the question are divided. In *Department of Corrections v. Superior Court* (1988) 199 Cal.App.3d 1087 [245 Cal.Rptr. 293], the Court of Appeal correctly acknowledged that ex parte third party discovery proceedings might be necessary to protect a defendant's

constitutional rights, but concluded on the record before it that the trial court had gone too far in excluding the district attorney entirely from the third party discovery proceedings at issue there. Instead, the trial court should have conducted a limited in camera review of the defendant's submissions in support of discovery and otherwise conducted open proceedings. (*Id.* at p. 1094.) In so ruling, the Court of Appeal emphasized that "[t]o assure due process, open proceedings involving the participation of both parties are the general rule in both criminal and civil cases." (*Id.* at p. 1092.)

More recently, in *Smith v. Superior Court* (2007) 152 Cal.App.4th 205 [60 Cal.Rptr.3d 841], the defendant sought a similar order excluding the prosecution from participation in third party discovery proceedings directed at obtaining information from the county jury commissioner about the jury selection system. The trial court denied the motion, but the Court of Appeal granted writ relief, relying entirely on our opinion in *Alford v. Superior Court, supra,* 29 Cal.4th 1033. (*Smith,* at pp. 212–216.) To the extent *Smith* read *Alford* as not only declining to protect, but affirmatively prohibiting, opposition party involvement in a third party discovery proceeding, it misread our opinion; as discussed, in *Alford* we concluded that in the *Pitchess* context prosecutors had no *entitlement* to participate, but were nevertheless entitled to notice, to be present, and to participate if the trial court so desired. Thus, *Alford* does not support the conclusion that opposing parties are prohibited from involvement in third party discovery.

█    Consistent with the governing statutes, a canvass of the underlying proceedings in reported cases suggests trial courts regularly permit prosecutorial participation in third party discovery. (See *People v. Hammon, supra,* 15 Cal.4th at p. 1120; *People v. Webb* (1993) 6 Cal.4th 494, 516 [24 Cal.Rptr.2d 779, 862 P.2d 779]; *People v. Kaurish* (1990) 52 Cal.3d 648, 686 [276 Cal.Rptr. 788, 802 P.2d 278]; *Mansell v. Otto* (2003) 108 Cal.App.4th 265, 269 [133 Cal.Rptr.2d 276]; *People v. Reber* (1986) 177 Cal.App.3d 523, 528–529 [223 Cal.Rptr. 139], overruled on other grounds in *Hammon, supra,* 15 Cal.4th 1117; *People v. Condley* (1977) 69 Cal.App.3d 999, 1017 [138 Cal.Rptr. 515]; *People v. Cohen* (1970) 12 Cal.App.3d 298, 324–325 [90 Cal.Rptr. 612].) These cases do not establish any prosecutorial *right* to participate, but they do reflect a decades-long understanding by trial courts that courts are at least *permitted* to entertain argument from the prosecution on third party discovery issues. We conclude that understanding is correct: a trial court is permitted to entertain argument from the opposing party relating to third party discovery.[9]

---

[9] Whether the trial court is required to do so, we need not and do not decide.

Arguing against the prosecution's standing claim, Humberto S. contends the better response to concerns about the preservation of the therapist-patient privilege for sex crime victims is for therapists to protect the privilege and courts to act as gatekeepers. (See, e.g., *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 713 [107 Cal.Rptr.2d 323, 23 P.3d 563] [custodian of records has a duty to assert privilege on behalf of privilege holder]; *Rudnick v. Superior Court* (1974) 11 Cal.3d 924, 932–933 [114 Cal.Rptr. 603, 523 P.2d 643] [court has discretion to protect privilege of absent third party on its own motion].) Whether or not this is so, our conclusion that trial courts may permit or solicit prosecutorial participation is fully consistent with Humberto S.'s suggested approach. It is undisputed that trial courts are authorized, indeed obligated, to regulate the use of subpoenas to obtain privileged third party discovery. (Evid. Code, § 916; see, e.g., *People v. Pack* (1988) 201 Cal.App.3d 679, 685 [248 Cal.Rptr. 240] [court statutorily required to assert privilege on behalf of absent victim], overruled on other grounds in *People v. Hammon, supra*, 15 Cal.4th 1117; *Lemelle v. Superior Court* (1978) 77 Cal.App.3d 148, 158 [143 Cal.Rptr. 450] [same]; *People v. Manson* (1976) 61 Cal.App.3d 102, 197 [132 Cal.Rptr. 265] ["courts have inherent power to control the issuance of their own process and to preclude an abuse of the right to subpoena witnesses"].) In fulfilling this gatekeeping function, a court may choose to permit or solicit prosecutorial input. (Cf. *Alford v. Superior Court, supra*, 29 Cal.4th at p. 1044 [trial court may solicit prosecutorial input at *Pitchess* hearing].)

The trial court in this case did not just permit the prosecution's participation in hearings on the third party discovery; it actively and continually solicited that participation. It specifically asked the prosecution for briefing on whether the subpoenaed records could lawfully be disclosed to the defense. It directed that the People procure the parents' presence at a hearing to determine whether disclosure should be ordered. It overruled multiple defense objections to the People's participation. Even as it announced its tentative ruling that Samantha's father's consent had authorized disclosure, it asked the People for further argument. It then invited the People to investigate whether a family court order might exist that required joint consent, and it voluntarily reserved its ruling when the People accepted the opportunity.[10]

---

[10] "THE COURT: The Court finds that either parent has the ability to consent. And once consent is given by either parent that there is consent, and that the objecting parent can't stop the release. Okay. Unless there's a specific order by the family court indicating that mutual consent is required. [¶] *Do you want time to check that out? That's okay too.*

"THE PEOPLE: I would appreciate that, your Honor. Since it is an important issue, I would like that time.

"THE COURT: All right then. I'll reserve my ruling." (Italics added.)

Given the trial court's acceptance of the prosecution's initial concerns and its repeated solicitation of further argument, we conclude the prosecution stepped over no line in submitting its views.

■ More to the point in this recusal case, a prosecutor's submission of argument at a third party discovery hearing, whether permitted or solicited by the trial court, does not amount to the representation of third party interests. In such instances, the prosecution's interests and arguments may *align* with those of one or more third parties, but the prosecution does not thereby assume representation of those parties any more than an amicus curiae whose interests align with a party represents that party by submitting arguments that support its position. Indeed, the two situations are simply two sides of the same coin; as a nonparty may, with the court's permission, submit argument supporting the interests of a party, so a party may, with the court's permission, submit argument supporting the interests of a nonparty.

Our comment in *Alford* that a prosecutor who actively challenges defense third party *Pitchess* discovery "advance[s] the interests of the third party custodian and police officer" (*Alford v. Superior Court, supra,* 29 Cal.4th at p. 1045) should not be taken to mean that the prosecution in doing so literally represents the third party custodian or police officer; as a matter of law, it does not. Rather, the prosecution's arguments in such circumstances simply benefit the interests of the third party custodian and police officer.

■ Nor did the prosecution assume representation of any third party when it sought to have a guardian ad litem appointed to represent Samantha's interests. The scheme for appointment of guardians ad litem expressly contemplates that other parties to a proceeding may propose to the court that a guardian be appointed for a minor or an incompetent. (Code Civ. Proc., § 373.) Such a proposal does not thereby render the party the representative of the minor's interests; instead, it is the court itself, and the guardian ad litem if one is appointed, that bears that responsibility. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 683 [31 Cal.Rptr.3d 472, 115 P.3d 1133]; *Williams v. Superior Court* (2007) 147 Cal.App.4th 36, 47, 49 [54 Cal.Rptr.3d 13].) The statutory scheme recognizes that the interests of justice are served best if the broadest range of those involved in legal proceedings are vested with the capacity to bring to a court's attention the need to ensure protection of a minor's rights. When it appears those rights may go unprotected, a party properly may act to avoid a potentially irreversible mistake.

Here, for example, Samantha's considerable statutory and constitutional interest in the privacy of her communications with her therapist was at stake. (Cal. Const., art. I, § 1; Evid. Code, § 1014; see *People v. Hammon, supra,* 15 Cal.4th at p. 1127 [psychotherapist-patient privilege is an aspect of the constitutional right of privacy]; *People v. Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738] [same]; *People v. Webb, supra,* 6 Cal.4th at p. 518 [there is a "strong policy of protecting a patient's treatment history"].) The trial court proposed to hold that Samantha's father's consent waived her privilege to preserve the confidentiality of these communications, despite the facts that (1) Samantha's mother, a legal guardian entitled to assert the privilege on Samantha's behalf (Evid. Code, §§ 1013, subd. (b), 1014, subd. (a)), was asserting the privilege, and (2) Samantha's father, as the brother of defendant Humberto S., had a manifest conflict of interest. Parental conflicts of interest may in some instances disqualify parents from waiving or asserting privileges on behalf of their minor children (see *In re Daniel C. H., supra,* 220 Cal.App.3d at p. 828; *In re Troy D.* (1989) 215 Cal.App.3d 889, 900–901 [263 Cal.Rptr. 869]) and in other instances support the appointment of an independent guardian ad litem (see, e.g., *Williams v. Superior Court, supra,* 147 Cal.App.4th at p. 48). Thus, at stake here were the constitutional rights of a nine-year-old alleged victim of a sex crime, at a point in time when disagreement between her parents, and one parent's conflict of interest, might have prevented her parents, her legal guardians, from effectively protecting those rights. If the prosecutors discerned the potential for a minor's interests to go unrepresented, Code of Civil Procedure section 373 allowed them to bring this to the court's attention without thereby assuming representation of Samantha.[11]

As the Court of Appeal properly recognized, *Bullen v. Superior Court* (1988) 204 Cal.App.3d 22 [251 Cal.Rptr. 32], which Humberto S. relies on, is inapposite. There, the prosecution had a formal relationship with the third party: it represented the widow of a crime victim in writ proceedings challenging defense access to the crime victim's dwelling. (*Bullen,* at p. 25.) Because a district attorney has no authority to prosecute civil actions absent specific legislative authorization,[12] this representation was unauthorized. The Court of Appeal remedied the situation by recusing the district attorney from

---

[11] Whether in this situation the court could appoint a guardian ad litem for Samantha, who was not technically a party (see *In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 222–224 [64 Cal.Rptr.2d 37]), is not before us, and we express no opinion on the question; we decide only that in making the request, the prosecution did not thereby assume representation of Samantha.

[12] See *Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1155–1156 [69 Cal.Rptr.2d 329, 947 P.2d 291]; *People v. McKale* (1979) 25 Cal.3d 626, 633 [159 Cal.Rptr. 811, 602 P.2d 731]; *Safer v. Superior Court* (1975) 15 Cal.3d 230, 235–237 [124 Cal.Rptr. 174, 540 P.2d 14].

the *civil writ proceeding*; lacking jurisdiction, it had no authority to, and did not, address whether recusal should extend as well to the underlying criminal action.

    Moreover, the district attorney's formal representation of the victim in *Bullen v. Superior Court, supra*, 204 Cal.App.3d 22, gave it a structural incentive (its duty of loyalty to its client) potentially at odds with the prosecution's duty to seek justice in a fair and evenhanded manner. Our cases upholding recusal have generally identified a structural incentive for the prosecutor to elevate some other interest over the interest in impartial justice, should the two diverge. (See, e.g., *People v. Eubanks, supra*, 14 Cal.4th 580 [receipt of income from the victim created an incentive to pursue prosecution beyond what the merits might warrant]; *People v. Conner* (1983) 34 Cal.3d 141 [193 Cal.Rptr. 148, 666 P.2d 5] [status of deputy district attorney as victim and witness created an incentive to pursue prosecution beyond what the merits might warrant]; *People v. Superior Court (Greer)* (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164] [status of district attorney's office employee as witness, relative of the victim, and beneficiary of the prosecution created an incentive to pursue prosecution beyond what the merits might warrant].) In true third party representation cases, a material risk exists that a prosecutor will continue to represent the third party interests even when those interests diverge from the People's interest in the evenhanded pursuit of justice. (E.g., *Young v. U. S. ex rel. Vuitton et Fils S. A.* (1987) 481 U.S. 787 [95 L.Ed.2d 740, 107 S.Ct. 2124] [attorneys appointed to prosecute criminal contempt for violation of an injunction against trademark infringement had a conflict because they also represented the trademark holder].) A prosecutor who has undertaken an attorney-client representation of the victim in a case might in the future feel pressure from the loyalty owed his or her client to pursue the case more vigorously than the merits might otherwise dictate.

    Here, in contrast, there was no formal representation of any third party, no corresponding duty of loyalty, and no divided loyalty or structural incentive potentially at odds with these prosecutors' duty to handle the prosecution of Humberto S. fairly. Rather, the prosecution vigorously advocated a legal position that happened to align with the interests of various third parties at one moment in time. In doing so, it was representing not the third party, but its own interest in promoting victim cooperation.[13] There was no reason to believe that if in the future the interests of the prosecutor and victim diverged, these prosecutors would choose to elevate the victim's interests

---

[13] Reporting a sexual offense—especially when the reporting victim is a minor—can be an enormously difficult and traumatic step. Successful prosecution of such cases frequently depends on victim cooperation. Prosecutors may reasonably conclude that if victims know disclosure of their confidential psychotherapy records without observance of legal protections is a significant risk, they will be less willing to step forward.

over their duty to act fairly. (Cf. *Young v. U. S. ex rel. Vuitton et Fils S. A.,* *supra*, 481 U.S. at p. 807, fn. 18 [becoming overzealous and overcommitted to a conviction is a personal issue, not a structural one].)

■ To summarize: This court explained in *Alford v. Superior Court, supra*, 29 Cal.4th 1033, that a prosecutor is not entitled to submit argument in certain types of third party discovery proceedings. This does not mean the prosecutor is prohibited from doing so; certainly with the trial court's consent, he or she is allowed to do so. Indeed, as even the *Alford* majority acknowledged, the prosecutor is entitled to notice of the hearing and may there address any questions the trial court has. (*Id.* at p. 1044.) Having been allowed to participate in the hearing, the prosecutor is not for that reason then subject to recusal unless he or she has, as in *Bullen v. Superior Court, supra*, 204 Cal.App.3d 22, and like cases, formally assumed representation of a third party. Only then does the prosecutor's appearance ripen into a structural incentive to represent interests at odds with the duty to seek evenhanded justice.

■ Consequently, the trial court's conclusion that various prosecutors had a conflict because of their representation of third parties was wrong as a matter of law. The trial court could, as in hearing after hearing it did, permit and indeed invite the prosecution to participate over defense objection. Only after multiple hearings—indeed, after writ review had been completed and the underlying documents disclosed—did the trial court apparently change its mind and decide the prosecution's participation created an impermissible conflict of interest. But the trial court was correct initially, when it allowed during these many hearings the prosecution's participation. The prosecutors' advocacy in these hearings of positions aligned with the interests of third parties did not involve actual representation of those parties' interests and thus created no ongoing conflict or divided loyalty that might jeopardize Humberto S.'s right to a fair trial. Nor can we affirm on the Court of Appeal's alternate theory that zeal in pressing an otherwise lawful position may become excessive and rise to the level of obstruction, thus creating a conflict; again, absent bad faith, as a matter of law it cannot. Accordingly, because the trial court's decision to recuse numerous prosecutors in this case rested on an error of law, it was an abuse of discretion.[14]

---

[14] As in *Hollywood v. Superior Court, supra*, 43 Cal.4th at page 735, footnote 10, because there was no conflict justifying recusal of any prosecutor, we need not discuss separately the trial court's decision to recuse Deputy District Attorneys Chiu and Hu and its decision to recuse other prosecutors more remote from the discovery dispute. Also as in *Hollywood*, because there was no conflict, we need not consider the further question whether any conflict was of a magnitude sufficient to render a fair trial unlikely. (Pen. Code, § 1424, subd. (a)(1).)

## Disposition

For the foregoing reasons, we reverse the Court of Appeal's judgment and remand this case to that court with directions to issue a writ of mandate vacating the trial court's recusal order and to remand the case to the trial court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.