Filed 5/14/14  Moon v. Super. Ct. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARK ANTHONY MOON, | |
| Petitioner, | |
| v. | G049726 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 13NF2759) |
| Respondent; | O P I N I O N |
| THE PEOPLE OF THE STATE OF CALIFORNIA, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Gregg Prickett, Judge. Petition granted.

Frank Ospino, Public Defender, Jean Wilkinson, Chief Deputy Public Defender, Mark S. Brown and Miles Jessup, Deputy Public Defenders for Petitioner.

No appearance for respondent.

Tony Rackauckas, District Attorney, and Brian Fitzpatrick, Deputy District Attorney, for Real Party in Interest.

\*          \*          \*

THE COURT: \*

After petitioner, Mark Moon,[1] unleashed what the trial court described as a profanity-laced tirade at the trial court, the court revoked Moon's right to self-representation based on *Indiana v. Edwards* (2008) 554 U.S. 164, 171 (*Edwards*). Moon contends the trial court abused its discretion when it relied on *Edwards* to terminate his right to self-representation pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). We agree and the petition is granted.

The undisputed procedural facts are as follows: On August 16, 2013, the People filed a felony complaint charging Mark Moon with one count of second-degree robbery and one count of misdemeanor battery stemming from two separate incidents. Prior convictions were also alleged and Moon was arraigned on the felony complaint. At the time of arraignment, the docket entry states Moon was warned of the "perils, pitfalls, dangers, and disadvantages of self-representation," a "*Faretta* Waiver [was] filed," and Moon was given a "pro per packet." Moon represented himself at his preliminary hearing on August 30, 2013, and again at the arraignment on the information on September 12, 2013. At the time of his arraignment on the information, the court again advised Moon of the "perils, pitfalls, dangers, and disadvantages of self-representation," made a finding that Moon had made a knowing, intelligent, and voluntary waiver of this

---

\*       Before O'Leary, P. J., Moore J., and Ikola, J.

[1]       The record is inconsistent on the spelling of petitioner's first name. We spell it based on the docket entry on August 16, 2013 amending the original complaint to show petitioner's "true name: Mark Anthony Moon."

2

right to counsel, and filed the "*Faretta* Waiver." Eighteen days after Moon was arraigned on the information, he argued and lost his motion to dismiss the information pursuant to Penal Code section 995.[2]

On the original date set for trial, both the People and Moon announced ready for trial on October 21, 2013, but according to the docket, Moon asked the court to continue the trial and appoint the public defender's office. According to the petition for writ of mandate prepared by the Orange County Public Defender's Office, Moon only sought the public defender's appointment to assist with negotiations with the district attorney's office. According to the petition, "[f]ollowing an impasse in those negotiations, [Moon] again requested to represent himself."

Trial was continued from November 15 to December 6, at which time the trial court denied Moon's *Marsden*[3] motion to relieve the Orange County Public Defender's Office. According to a nunc pro tunc docket entry made a week after the hearing, "Defendant's request to go pro per is equivocal as stated on the record and that defendant is receiving appropriate representation of counsel; further, as to the timeliness of defendant's request. Defendant's *Faretta* request to represent himself is denied as set forth on the record."

The hearing scheduled for December 9, 2013, was trailed to the following day because Moon was not transported to court. On December 10, 2013, both parties again announced ready for trial, and again, Moon asserted his right to self-representation. Once again the trial court advised Moon of the "perils, pitfalls, dangers, and disadvantages of self-representation," granted his *Faretta* motion, and he was given a "'pro per packet' of supplies." The court granted Moon's motion to continue, and trial was continued to January 7, 2014. On January 7, Moon filed a written motion asking the court to continue the trial again. Moon explained the reason he needed the continuance

---

2      All further references are to the Penal Code.
3      *People v. Marsden* (1970) 2 Cal.3d 118.

was because he had not been given access to the telephone or use of the law library. Moon also complained that he had not been allowed to shower and he was concerned that he would not be clean and shaven for trial. The motion also stated that as a result of being housed in a location where he is prohibited from leaving his cell, he would "need to waive time because [he] got nothing accomplished." As a result of his inability to prepare for trial, Moon "motion[ed] for the guards to be place[d] under criminal supervision." According to the docket, there was no objection to the continuance by the People and trial was continued to February 4, 2014. Although no court date was scheduled between January 7 and February 4, on January 13, the matter was placed on calendar for January 22, 2014. The docket entry for January 22 indicates Moon was not present in court because he "refused to leave his cell."

When Moon appeared in court on January 30, 2014, he complained the court failed to "put [him] under criminal supervision like [he had] asked." Moon also complained the jail still refused to allow him to make phone calls, he had not been given law library privileges, and "they've been moving me around" and his documents had been lost. Moon explained that although he had been called for court on January 22, he refused to be transported because deputies at the jail had been violating his rights. When the court warned Moon that his refusal to appear in court constituted a basis for the court to terminate his "pro per" privileges, the following exchange took place:

"The Court: What you're saying is you don't like my ruling, so to protest my ruling, you're not going to come to court. [¶] The Defendant: No, it's not that. It's just the last time I asked you to put these guys in criminal supervision, you – [¶] The Court: I'm saying I declined your request. So what you're telling me is, Judge, if I ask you to do something, you don't do it, then I'm not going to come to court? [¶] The Defendant: What makes you – what's the logical point of me coming to court and when these guys are not letting me make my phone calls, not doing anything, you're not doing anything about the situation, they said that they knew for a fact that you called over there

4

and they still have been doing nothing. The Judge Prickett – tell Judge Prickett 'Fuck them.' I'm like okay, so obviously don't care about what you're saying, so I'm asking that you move me to main jail because – [¶] The Court: Sir, I have that request. I have previously denied that request. [¶] The Defendant: No. This is the first time I've asked for housing modification. [¶] The Court: No, it's not. [¶] The Defendant: Yes, it is. [¶] The Court: Sir, do not disagree with me. [¶] The Defendant: It's the truth. [¶] The Court: What's your next question? [¶] The Defendant: I don't understand. So you're – I don't understand why you're not – [¶] The Court: I'm not going to explain myself, engage in this conversation, Sir. [¶] What is your next question? [¶] The Defendant: You're telling me I can't move away from the deputies that are violating – [¶] The Court: Matter is off calendar. Trial date of 2-4 remains. He's refusing to comply with court orders as the court is directing him to move on to the next issue. [¶] The Defendant: Well, then I would like a change of venue. You're basically putting me in harm's way. You're telling me you won't move me to a place where I can – [¶] The Court: Ma'am, the Court is ordering you to stop taking down what Mr. Moon is saying. The Court is moving on to the next case."

As a result of the court declaring a recess, what happened next took place off the record. After Moon had been removed from the courtroom, the court recalled the matter, appointed the public defender's office to represent Moon, and according to the docket, made "a record regarding [Moon's] previous conduct and use of profanity directed at the Court while in the holding cell after the Court had declared a recess in this matter." The court described the off-the-record exchange with Moon and said:

The Court: "After the court directed the court reporter to stop taking down what was being said, the court – the defendant continued to address the court, and then if I could characterize it as such, he spiraled into a conversation laced with profanity, directed his profane comments directly towards me, addressing my race, addressing my gender, I guess, you know, all sorts of different things that he was addressing towards

me.  [¶]  This is not the first time that Mr. Moon had acted out.  It is not the first time that Mr. Moon has been to court and addressed issues to the court on numerous – what the court will characterize as unrelated matters to him becoming prepared for his trial.  [¶] The court has no confidence that the defendant would ever be prepared to go to court. The court is exercising – finds it's appropriate to terminate Mr. Moon's pro per privilege at this time.  They're now revoked.  [¶]  The Court would reappoint the Orange County Public Defender's Office to represent Mr. Moon."

At Moon's next court appearance on February 5, 2014, the court advised Moon that as a result of his "outburst," the court had revoked his "pro per" privileges and appointed the public defender's office to represent him.  When the court asked Moon if he wanted to be heard, Moon said he wanted to continue as a pro per and explained the following:

"The Defendant:  I understand that you did call the jail, you know, check on–even though you didn't put criminal supervision.  And the whole entire time I was there, I wasn't getting my phone calls, I wasn't basically getting my legal mail.  I understand I got upset with you.  The reason why I did was because the fact of the matter is I didn't think you believed me.  And the fact of the matter is even though I refused court, I thought that was a sign to let you know they were messing with me.  I have been assaulted.  I have paperwork stating I've been assaulted as far as – the jail . . . .  [¶]  I talked to the pro per sergeant.  He said that he would, you know, go ahead and try to continue watching over so that way I would be able to continue with my pro per status since I'm already this far in my case.  [¶]  And, you know, I understand that I got upset with you, but like I said, they were violating my rights, had – they did move me to another spot in the jail.  And I would like to continue my status as far as – because I've done a lot of work as far as this whole time with my case.  If I can get my status back, I'd appreciate it."

6

Although the situation that seemed to be the source of Moon's outburst on January 30 seemed to have resolved itself once Moon had been moved to another location at the jail, the trial court denied Moon's request to reinstate his "pro per" status and said:

The Court: "I hear what you're saying, Mr. Moon. The court is making this order not only based on the outburst that you did, but your previous behavior in court on other occasions. The court is in part relying on factors that were explained by the United States Supreme Court in a case called *Indiana vs. Edwards*. The court is aware of that case. I am – I have noted those factors. [¶] I reluctantly did this, Sir. But I feel you left me no choice after your behavior last time in court. You had been warned when you went pro per that if you became disruptive, if you acted out in court, that your pro per privileges could be taken away. This was not the first time that you had done that. [¶] The court has heard your reasons, but the court will confirm its order. Your pro per privileges are revoked at this time. Public Defender's Office will now act as your lawyer."

The court granted counsel's motion to continue the trial to March 5, 2014, and counsel filed this petition seeking a stay of the trial and a peremptory writ ordering respondent court to vacate its order revoking Moon's right to self-representation and to conduct an inquiry into why Moon was being denied his pro per privileges at the jail. We stayed the trial and invited real party to file an informal response to the petition.

In the informal response the People urged this court to summarily deny the petition and also cited *Edwards* and the footnote in *Faretta* which states the trial court may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. According to the People, Moon's outrageous, disruptive, and disrespectful behavior on January 30 with his "profanity-laced racial attacks," his "outright disobedience because he did not get his way on January 7, 2014," and his out-of-court misconduct when he refused to appear in court on January 22, 2014, crossed the line. Although Moon was not present when the January 22 court date was scheduled, the People contend the court's denial of Moon's request to be moved to the main jail and to place the jail deputies under "criminal supervision" on January 7, served as the reason

7

why Moon refused to appear in court on January 22, 2014. According to the People, the trial court acted well within its discretion when it revoked Moon's right to self-representation to protect the dignity of the courtroom and the judicial process.

After considering the People's informal response, this court advised the parties that it was considering issuing a peremptory writ in the first instance pursuant to *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180, and invited real party to file an additional response. Although this court had not requested nor received a response from the trial court, respondent court nevertheless advised this court in a minute order that it declined to respond further.

## DISCUSSION

Generally, "[a] trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial. [Citations.]" (*People v. Welch* (1999) 20 Cal.4th 701, 729.)

Once the right to self-representation is granted, the trial court retains discretion to "terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." (*Faretta v. California*, *supra*, 422 U.S. at p. 834, fn. 46.) As *Faretta* explained, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." (*Ibid.*) A defendant is entitled to self-representation only if he or she "is able and willing to abide by rules of procedure and courtroom protocol." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 173.)

When deciding whether to terminate a defendant's right to self-representation, "[t]he trial court possesses much discretion when it comes to terminating a defendant's right to self-representation and the exercise of that discretion 'will not be

8

disturbed in the absence of a strong showing of clear abuse.' [Citations.]" (*People v. Welch*, *supra*, 20 Cal.4th at p. 735.) Accordingly, a court's revocation of the right to self-representation based on a defendant's misconduct is reviewed for abuse of discretion and a reviewing court must "accord due deference to the trial court's assessment of the defendant's motives and sincerity as well as the nature and context of his misconduct and its impact on the integrity of the trial in determining whether termination of *Faretta* rights is necessary to maintain the fairness of the proceedings." (*People v. Carson* (2005) 35 Cal.4th 1, 12 (*Carson*).)

In this case, the trial court identified the misconduct that led to the court's decision to revoke Moon's in propria persona status as the outburst during the court's recess on January 30, 2014, as well as Moon's "previous behavior in court on other occasions." While it is clear that Moon's outburst on January 30 was a factor in the court's decision to revoke his right to self-representation, the trial court never explained, identified, or described the "previous behavior" on which it also relied to revoke Moon's in propria persona status and leaves this court guessing as to what the "previous behavior in court" might be.

Identifying the misconduct relied on by the court when it exercised its discretion to revoke Moon's in propria persona privileges is critical because the trial court must determine whether the misconduct is such that it impacts the core integrity of the trial. In *Carson*, *supra*, 35 Cal.4th 1, the trial court revoked the defendant's in propria persona status when the defendant's investigator mistakenly provided the defendant with discovery the defendant was not entitled to receive. The prosecutor argued the defendant's improper acquisition of the discovery, when considered in light of previous misconduct that included an attempt to intimidate a prosecution witness, warranted termination of his *Faretta* rights. (*Id.*, at p. 8.) Prior to *Carson*, *Ferrel v. Superior Court* (1978) 20 Cal.3d 888, held that a defendant could be deprived of the right to self-representation "only . . . when he engages in disruptive in-court conduct . . . ." (*Id.* at p. 891.) *Carson* considered the issue of terminating the right to self-representation based on out-of-court misconduct and held "the effect, not the location, of the misconduct and its

9

impact on the core integrity of the trial will determine whether termination is warranted." (*Carson*, *supra*, 35 Cal.4th at p. 9.)

*Carson* explains that "[w]hen determining whether termination is necessary and appropriate, the trial court should consider several factors in addition to the nature of the misconduct and its impact on the trial proceedings. One consideration is the availability and suitability of alternative sanctions. [Citation.] Misconduct that is more removed from the trial proceedings, more subject to rectification or correction, or otherwise less likely to affect the fairness of the trial may not justify complete withdrawal of the defendant's right of self-representation. [Citations.] The court should also consider whether the defendant has been warned that particular misconduct will result in termination of in propria persona status. [Citation.] Not every obstructive act will be so flagrant and inconsistent with the integrity and fairness of the trial that immediate termination is appropriate. By the same token, however, the defendant's acts need not result in a disruption of the trial—for example, by successfully dissuading a witness from testifying. The likely, not the actual, effect of the misconduct should be the primary consideration." (*Carson*, *supra*, 35 Cal.4th at p. 10.)

*Carson* explained further that in addition to the other factors, "the trial court may assess whether the defendant has 'intentionally sought to disrupt and delay his trial.' [Citations.] In many instances, such a purpose will suffice to order termination; but we do not hold that an intent to disrupt is a necessary condition." (*Carson*, *supra*, 35 Cal.4th at p. 10.)

In this case, instead of considering the impact of Moon's misconduct on the integrity of the trial, the fairness of the proceedings, the availability and suitability of alternative sanctions, and whether Moon intentionally sought to disrupt and delay his trial, (*Carson*, *supra*, 35 Cal.4th at pp. 9-10) the court said it relied on and "noted those factors" in *Indiana v. Edwards*, *supra*, 554 U.S. 164, when it revoked Moon's in propria persona privileges.

In *Edwards*, a case which seems to have no application to the facts in this case, the defendant was charged with attempted murder for discharging a firearm at a

10

security officer and wounding a bystander when he was discovered trying to steal a pair of shoes from a department store. Edwards, who suffered from schizophrenia, was the subject of three competency proceedings. In two of the three competency proceedings, the court determined Edwards was not competent to stand trial, and in the last hearing at which he was found not competent, a psychiatrist testified that Edwards could understand the charges against him, "but he was 'unable to cooperate with his attorney in his defense because of his schizophrenic illness'; '[h]is delusions and his marked difficulties in thinking make it impossible for him to cooperate with his attorney.'" (*Indiana v. Edwards*, *supra*, 554 U.S. at p. 168.)

Edwards made two requests to represent himself at trial. After enumerating the lengthy record of psychiatric reports in the case, the trial court concluded that although Edwards was now competent to stand trial, he was not competent to represent himself. The subsequent judgment of conviction was reversed on appeal and affirmed by the State Supreme Court on the basis that once Edwards was competent to stand trial, under *Faretta*, Edwards could not be prohibited from exercising his right to self-representation. (*Indiana v. Edwards*, *supra*, 554 U.S. at p. 169.) On review, the U.S. Supreme Court considered whether state courts could deny the right to self-representation to a defendant with a history of mental illness after the defendant was deemed competent to stand trial. *Edwards* holds "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* [*v. United States* (1960) 362 U.S. 402] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Indiana v. Edwards*, *supra*, 554 U.S. at pp. 177-178.)

Because the record in this case reveals no history of diagnosed or undiagnosed mental illness attributed to Moon, this court is at a loss as to the application of *Edwards* to the facts of this case and to the "noted [ ] factors" the trial court took into

11

account when it revoked Moon's pro per status. Terminating a defendant's right to self-representation "is a severe sanction and must not be imposed lightly." (*Carson*, *supra*, 35 Cal.4th at p. 7.) Although the trial court's discretion "'will not be disturbed in the absence of a strong showing of clear abuse'" (*People v. Welch*, *supra*, 20 Cal.4th at p. 735), "when a trial court's decision rests on an error of law, that decision is an abuse of discretion." (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 746.) It is an abuse of discretion to apply the wrong legal standard. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

According to *Carson*, "[e]ach case must be evaluated in its own context, on its own facts, in light of the considerations discussed [in this case]." (*Carson*, *supra*, 35 Cal.4th at p. 10.) While there is no doubt the profanity-laced tirade Moon unleashed on January 30 was unacceptable, as *Carson* explains, not every display of misconduct is inconsistent with the integrity and fairness of the trial so that "immediate termination is appropriate." (*Ibid*.)

In this case, at the time the court revoked Moon's in propria persona status, Moon had represented himself at the arraignment on the complaint on August 16, 2013, at his preliminary hearing on August 30, 2013, the subsequent arraignment on the information on September 12, 2013, and at the argument on his section 995 motion on September 30, 2013, all without seeking a continuance.

It was not until Moon began complaining about being harassed by two deputies at the jail that he refused to appear in court and began seeking continuances because of his inability to prepare for trial. If believed, Moon was being moved around at the jail, his documents were lost, and he was denied his "pro per" phone calls, legal mail, and law library privileges.

Had the trial court considered the factors in *Carson* before revoking Moon's right to represent himself, it may have concluded that Moon's misconduct on January 30, and any "previous behavior," was not an attempt to intentionally disrupt or delay the trial, did not threaten the core integrity and fairness of the trial, and that an

12

alternative sanction would have sufficed in lieu of the "severe sanction" of immediate termination.

## DISPOSITION

For the forgoing reasons, the trial court is ordered to vacate its order revoking Moon's right to self-representation on January 30, 2014, and to reconsider whether to revoke Moon's right to self-representation based on the factors in *Carson*.