Filed 12/1/14  Nauman v. Appellate Div. of Superior Court CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| NANCY JANE NAUMAN, | |
| Petitioner, | |
| v. | G050786 |
| APPELLATE DIVISION OF THE ORANGE COUNTY SUPERIOR COURT, | (Super. Ct. Nos. 13WM02844, 30-2014-00745573) |
| Respondent; | O P I N I O N |
| CITY OF HUNTINGTON BEACH, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Appellate Division of the Orange County Superior Court, Deborah C. Servino, Glenn R. Salter, and Richard Y. Lee, Judges.  Petition granted.

Frank Ospino, Public Defender, Mark S. Brown and Scott Van Camp, Deputy Public Defenders for Petitioner.

No appearance for respondent.

Jennifer McGrath, City Attorney and Daniel K. Ohl, Deputy City Attorney, for Real Party in Interest.

THE COURT:*

Respondent trial court denied petitioner, Nancy Jane Nauman's discovery motion and she sought review in the Superior Court Appellate Division. The Appellate Division denied relief on the basis that Nauman has an adequate remedy at law. We disagree and grant the petition.

FACTS

Petitioner, Nancy Jane Nauman, was arrested for two misdemeanor counts of driving under the influence. According to the police report, dispatch advised Huntington Beach police officers that a possible drunk driver left a bar on Beach Boulevard traveling in an unknown direction. The caller identified the driver as a female and provided a description of the license plate number and the car, an older yellow Dodge Dart. According to the police report, while traveling on Main Street, officers observed a yellow Dodge Dart with the same license plate number that had been broadcast by the dispatcher. According to the officer who prepared the police report, as they were traveling behind the car traveling southbound on Main Street, they observed the car "as it began to drift into the single lane of northbound Main Street approximately three times for several seconds, violation of CVC 21658(a)." According to the police report, the officers conducted a traffic stop and spoke to Nauman, who was identified as the sole

_____

* Before O'Leary, P. J., Ikola, J., and Thompson, J.

2

occupant of the car. According to the police report, Nauman displayed signs of being under the influence and she "advised me she was coming from [the] bar and was driving home."

After administering field sobriety tests, Nauman was arrested for suspicion of driving under the influence. The car, which the police report states was illegally parked along a red curb, was towed.

Nauman filed a discovery motion pursuant to Evidence Code sections 1043 through 1047, and *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). According to counsel's declaration filed in support of the motion, Nauman was not driving when she was arrested by the officers in this case. According to counsel's declaration, at the time Nauman was contacted by the officers, (1) her car was already parked on Main Street, (2) she was asleep inside the car, (3) the officers never observed her driving on Main Street as claimed in the police report, (4) the officers never observed her car drift into the northbound lane as claimed in the police report, and (5) she never told the officers she was driving home from a bar as the officer also claimed in the police report. According to counsel's declaration, the officer who prepared the arrest report committed acts of misconduct in the form of dishonesty when he prepared a police report claiming he witnessed Nauman driving and drifting into the northbound lane. He was also intentionally false when he attributed the statement to her that she said she was driving home from a bar.

Counsel's declaration states that based on "the information alleged in the police report, we are informed and believe that [the officer] fabricated his description of events in this case and he did not see [ ] Nauman driving." According to counsel, the digital audio or video recording system are unavailable and "[i]n the absence of an alternative verification tool, the credibility of the testimony given from the officer who reported the alleged events . . . is a material issue to the defense's case." According to counsel's declaration, the discovery motion is being used to "locate and investigate other

witnesses to[,] and other victims of this officer's acts of dishonesty and fabrication of police reports.  It will be used in cross-examination and impeach the officer at trial."

Although Nauman never claimed a Fourth Amendment violation when officers contacted her while she was sleeping in a car illegally parked on a city street, respondent trial court questioned why a motion to suppress had not been filed and said, ". . . there may be a fertile ground here for a challenge based on Fourth Amendment rights of the defendant that this – I think the officer has to have some reason for an *enforcement stop*, and if it seems to me that information would come out in a 1538.5, if, in fact, the information at a suppression motion might reveal a plausible scenario to review the officer's personnel records."  (Italics added.)

When respondent trial court addressed the merits of the motion, it said, "I'm not convinced at this juncture based upon the dispute over whether or not, I gather, the vehicle was moving or not is sufficient for this court to grant a *Pitchess* motion that would be to the extent where the court would go into chambers, review the officer's records for dishonesty; because it seems to me that under a 1538 you might achieve, essentially, the objective in terms of this case of having all evidence of a detention and a stop suppressed rather than this court at this juncture based upon these scant facts that, frankly, don't suggest to me a plausible scenario that would warrant this court reviewing the officer's personnel records in chambers and in camera."

When it finally ruled on the motion, respondent court said, ". . . I'm going to deny the *Pitchess* motion.  I'm not going to go into chambers based upon what I would deem as a fairly threadbare allegation of what happened in terms of the version, the plausible scenario presented by the defense counsel *as opposed to* the scenario presented by the city attorney.  [¶]  The bottom line is that's why we have appeals court.  I may be wrong on that.  It may be that the standard is so low at this juncture that any allegation that there is a difference of opinion in terms of what happened based upon what your client is telling you what happened based upon what the police officer has alleged in his

4

report upon which the district attorney elected to file a charge – perhaps, I am mistaken." (Italics added.)

To clarify matters, the court said, ". . . I want to make clear that my ruling today in denying this *Pitchess* motion at this time *with prejudice* in that I believe there has to be more to the factual scenario, the plausible scenario, other than the difference as to whether the vehicle was observed or not observed based upon the facts and circumstances as presented in this particular case." (Italics added.)

Nauman sought review of the trial court's ruling in the Superior Court Appellate Division. The Appellate Division denied relief with the statement, "Petitioner has an adequate remedy at law."

Nauman sought relief in this court and we invited real party (the City) to file an informal response to the petition and issued *Palma* notice. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180.) In its informal response, the City takes the position the trial court's ruling is correct because good cause was lacking as a result of petitioner failing to "'explain the facts in the police report,' [citation] [she] did not deny conversing with [the officer] or provide an alternate version of the facts concerning the reason and nature of her conversation with him[,] [citation] [t]he motion failed to include her path of travel to the location of the stop, her objective symptoms of alcohol intoxication, her apparent confusion in answering simple questions concerning her drinking that evening, her inability to pass the field sobriety test, her admissions regarding her drinking, or that someone was concerned enough to report to the police that someone in a car matching hers, with the same license plate, left [the bar] with a possibly drunk driver."

DISCUSSION

Subdivision (b) of Evidence Code section 1043 states a motion seeking discovery into an officer's personnel record, "shall include all of the following:  [¶]  (1) Identification of the proceeding in which discovery or disclosure is sought, the party seeking discovery or disclosure, the peace or custodial officer whose records are sought, the governmental agency which has custody and control of the records, and the time and place at which the motion for discovery or disclosure shall be heard[;]  [¶]  (2) A description of the type of records or information sought[;]  [¶]  (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records."

To the extent denial of the *Pitchess* motion and subsequent review was based on Nauman's failure to file a suppression motion before filing the *Pitchess* motion, Nauman is entitled to relief.  There is no requirement in either Evidence Code section 1043 or *Pitchess* that requires the moving party to make an election between pretrial motions.  Nor is there a designated order or hierarchy as to which motions must be filed and considered first before the court rules on the merits of a *Pitchess* motion.  Decisions to file pretrial motions, such as a motion to suppress evidence, are tactical decisions, within the discretion of counsel to control trial strategy.  (*People v. Turner* (1992) 7 Cal.App.4th 1214, 1220-1222.)

In this case there a number of reasons why counsel either did not file a motion to suppress, or filed the *Pitchess* motion first, not the least of which is counsel's explanation at the hearing, "The issue is not a stop," and the possibility that complaints may be purged from an officer's personnel file while the defendant litigates or investigates pretrial motions.  (Pen. Code, § 832.5, subd (b).)  "Reviewing courts should

6

avoid second-guessing counsel's informed choice among tactical alternatives." (*People v. Pope* (1979) 23 Cal.3d 412, 424.)

The only issue respondent court should have considered is whether Nauman made the required showing of good cause to be entitled to the in camera review by the court. As *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74 (*Santa Cruz*), explained, to show "good cause" a moving party must present a "specific factual scenario" establishing a "plausible factual foundation" for allegations of officer misconduct. (*Id.* at pp. 85-86.)

Although the trial court described Nauman's specific factual scenario as a "very minor divergence," "[the] factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1024-1025 (*Warrick*).)

Without the benefit of an audio or digital recording, it's unclear what additional facts Nauman should have alleged. The City contends Nauman failed to discuss her path of travel, her symptoms of intoxication, her inability to pass a field sobriety test, and her conversation with the officer. But these facts are largely irrelevant and miss the point. Nauman did not claim that she was not intoxicated or that she did not speak to the officers.

Nauman's specific factual scenario in this case consists of more than a general denial and alleged that at the time the officers in this case claimed they conducted a traffic stop, she was asleep in a parked car and therefore any police report that describes her driving on Main Street, in any manner, is false. Nauman states further that any police report that claims she told the officer she was driving home from a bar is also false. As a result of the disparity between Nauman's version of events and the description of her arrest in the police report, Nauman states the officer who prepared the arrest report committed acts of misconduct in the form of dishonesty when he prepared the police report and claimed to have seen her driving and drifting into the northbound lane, and

attributed the statement to her that she was driving home from a bar. This "minor divergence" could not be more colossal.

With respect to presenting a plausible factual foundation, respondent trial court concluded the "scant facts . . . don't suggest . . . a plausible scenario . . . warranting reviewing the officer's personnel records in chambers and in camera." Respondent trial court's explanation that Nauman's version of the facts represent a fairly threadbare allegation "as opposed to" the scenario presented by the city attorney, suggests respondent court judged the credibility of the versions provided by the parties, which "elevate[s] the showing of good cause for *Pitchess* discovery beyond that required by law." (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1024.) "To require a criminal defendant to present a *credible* or *believable* factual account of, or a motive for, police misconduct suggests that the trial court's task in assessing a *Pitchess* motion is to weigh or assess the evidence. It is not. . . . The trial court does not determine whether a defendant's version of events, with or without corroborating collateral evidence, is persuasive—a task that in many cases would be tantamount to determining whether the defendant is probably innocent or probably guilty." (*Id.* at p. 1026.)

"[A] plausible scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Warrick*, at p. 1026.)

Although we review *Pitchess* orders under the abuse of discretion standard (*People v. Hughes* (2002) 27 Cal.4th 287, 330), our Supreme Court has emphasized the threshold showing of good cause required to obtain *Pitchess* discovery is "relatively low." (*Santa Cruz*, *supra*, 49 Cal.3d at p. 83; *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 70.) In this case, the trial court was tasked with making a determination of whether Nauman's version, that she was asleep in a parked car when approached by the officers, "might or could have occurred," not weigh Nauman's version against the officer's

8

account in the police report.  "[W]hen a trial court's decision rests on an error of law, that decision is an abuse of discretion."  (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 746.)  It is an abuse of discretion to apply the wrong legal standard.  (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

## DISPOSITION

Let a peremptory writ of mandate issue in the first instance directing the Appellate Division of the Orange County Superior Court to vacate its order denying the petition for writ of mandate, and instead consider the merits of the petition.