# Supreme Court of Texas

No. 22-1137

In re Jeff Younger,

*Relator*

On Petition for Writ of Mandamus

JUSTICE BLACKLOCK, joined by JUSTICE YOUNG, concurring in the denial of the petition for writ of mandamus.

This pro se mandamus petition arises from a child-custody dispute involving twin boys, one of whom has exhibited confusion about his gender. Mother, who has custody of the boys, recently moved to California after a Dallas County district court, in September 2022, authorized Mother to reside with the children anywhere in the continental United States. Father, the relator in this Court, is concerned that Mother's move to California will bring about the medical "transitioning" of his son. Three months after the district court authorized the move to California, Father belatedly seeks an emergency order from this Court requiring their return.

I concur in the Court's denial of the petition because Father is already in possession of a court order prohibiting Mother from doing precisely what he fears she will do with his son. In October 2021, the

district court—with Mother's full agreement, and indeed at her request—ordered that:

> neither parent may treat a child with hormonal suppression therapy, puberty blockers, and/or transgender reassingment surgery (if any) without the consent of the parents or court order.

This agreed order is binding on both parents and enforceable by contempt, no matter where they reside. The effect of the order is that neither parent has the legal authority to consent unilaterally to gender-transition therapy for their son, whether that therapy takes place in California, Texas, or elsewhere. As long as this order is in effect, Mother's parental rights do not include the right to obtain gender-transition therapy for her son. That is just as much the case in California as it is in Texas. Mother freely acknowledges that she is bound by this order in both Texas and California. What is more, Mother has flatly denied to this Court that she will seek to evade the district court's order while she is in California. As a result, should she fail to honor her promise as Father fears, contempt of the district court's order would not be her only concern.

Father believes that California's enactment of Senate Bill 107, which goes into effect on January 1, 2023, will enable Mother to evade the Texas court order prohibiting her from unilaterally consenting to gender-transition therapy. Father misreads California's new law. By my reading of SB 107, Father's fears are no more likely to be realized in California under SB 107 than they were before the bill's enactment.

2

Described by its lead author as a "trans refuge" bill designed in part to respond to "executive and legislative action in Texas,"[1] the bill certainly casts a wide net in pursuit of its objectives. The bill contains several provisions barring enforcement in California of "a law of another state" or "another state's law" that prohibits "gender-affirming health care." Thus, SB 107—both as advertised and as written—is California's response to other states' legislative enactments or administrative rules outlawing gender-transition therapy. While SB 107's position on other states' *laws* is clear, I see no provision in the bill that would alter the enforceability, in California, of a Texas *court order* requiring divorced parents to agree before subjecting their child to gender-transition therapy.

Father reads SB 107's prohibitions on the enforcement of another state's "law" against gender-transition therapy as a prohibition on enforcement in California of court orders limiting access to such therapy. It is not. A court order allocating the parental rights of divorced parents based on case-specific judicial findings about the best interests of their children is in no way "a law of another state." And in the very unlikely event California's courts interpreted their statute in such an odd way, they would of course run head long into the Full Faith and Credit Clause. U.S. CONST. art. IV § 1.

The bill's authors were likely aware of the prevailing interpretation of the Full Faith and Credit Clause, under which states

---

[1] Press Release, Scott Weiner, Senator, California State Senate, Senator Weiner's Statement on Bill to Provide Refuge for Trans Kids and their Families (Sept. 30, 2022), https://sd11.senate.ca.gov/print/1042.

have some leeway to deny enforcement of other states' *laws* on policy grounds but little or no leeway to deny enforcement of other states' courts' *judgments*. The U.S. Supreme Court's "decisions support no roving public policy exception to the full faith and credit due *judgments*." *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998) (internal quotations omitted). Understanding this important distinction— evident throughout the text of SB 107—between "another state's law" and the actions of another state's courts is essential to correctly understand the very limited extent to which California could refuse recognition of the Dallas County district court's child-custody determinations, even if it wanted to do so. While SB 107 treads close to territory prohibited by the Full Faith and Credit Clause—and ultimately may be found to transgress it in various ways—nowhere does the bill purport to prevent enforcement in California of out-of-state child-custody orders establishing which parents may consent to gender-transition therapy.

To summarize, under an existing Texas court order that Mother agreed to and that Mother acknowledges is binding on her, Mother lacks the legal right to consent to gender-transition therapy for her son. This legal disability is just as real in California as it is in Texas, and Mother readily acknowledges this as well. When a custody order specifies that joint parental consent is required, then a California doctor, just like a Texas doctor, must ensure that the appropriate parents have consented to treatment administered to their children.[2] Under the district court's

---

[2] *People v. Superior Ct. (Humberto S.)*, 182 P.3d 600, 605 n.3 (Cal. 2008) ("Under Family Code section 3083, a court entering a joint custody order must

4

order, any doctor in any state giving gender-transition therapy to Father's son without Father's permission would do so without the lawfully required parental consent.[3] Nothing in SB 107 changes any of this.

\* \* \*

Father's further concern is that a California court could undermine the Texas order at Mother's request. He points to the following provision of California law, amended by SB 107 as shown in bold:

> A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse, **or because the child has been unable to obtain gender-affirming health care or gender-affirming mental health care, as defined by Section 16010.2 of the Welfare and Institutions Code.**

Cal. Senate Bill 107, § 5 (modifying CAL. FAM. CODE § 3424(a)). Under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), a version of which is the law in both California and Texas, a California court is obligated to respect a Texas court's custody orders and cannot modify the Texas court's orders unless the Texas court relinquishes jurisdiction—an action reviewable by mandamus. TEX.

---

specify the circumstances in which joint parental consent is required; in all other circumstances, the consent of one parent is sufficient.").

[3] *See Am. Acad. of Pediatrics v. Lungren*, 940 P.2d 797, 801 (Cal. 1997) ("The requirement that medical care be provided to a minor only with the consent of the minor's parent or guardian remains the general rule, both in California and throughout the United States.").

5

FAM. CODE §§ 152.201(a)(2), .203; *accord* CAL. FAM. CODE §§ 3421(a)(2), 3423.

Father is nevertheless concerned that the above-quoted provision could be used to temporarily authorize gender-transition therapy in direct contravention of the Texas order.[4] Yet to obtain such an emergency order from a California court, Mother would have to take the position that an existing court order she agreed to now poses an emergency threat to her child. Mother has repeatedly asserted in court that the Texas order is desirable and in the child's best interests, which would make it quite difficult for Mother to argue the contrary position to a California court, even if that were her intention. Mother would also have to claim that the emergency is so dire that there is no time to ask the Texas court to amend its order—a highly doubtful proposition in the age of video hearings. The California court would have to consult with the Texas court. CAL. FAM. CODE § 3424(d). And the California court would have to decide to take the extraordinarily unusual step of issuing an emergency order directly undermining another state's court order even though the other state's court was readily available to hear a request to modify the order.

---

[4] Even before SB 107, a California court that considered lack of gender-transition therapy to be an emergency case of mistreatment of a child could have invoked temporary jurisdiction under section 3424(a)). SB 107 makes lack of gender-transition therapy an explicit ground for finding an emergency that qualifies for temporary emergency jurisdiction. But a judge inclined to view such a situation as an emergency threat to a child was already empowered to invoke temporary emergency jurisdiction. And SB 107 does not mandate that courts find that the lack of such therapy constitutes an emergency justifying temporary jurisdiction. It leaves that question entirely up to the courts, as it was before SB 107.

Concern that any of this will happen would be entirely speculative in any case. In this case, given that Mother has now represented to both this Court and the district court that she has no intention of trying to make it happen, it is not merely speculative but potentially prohibited by principles of estoppel.

This Court cannot intervene based on tenuous speculation about what other courts might do in the future at the request of a party who may never ask. The only court to have acted so far has preserved Father's right to withhold consent to gender-transition therapy for his son. That right is enforceable in California, where Mother lacks the legal authority to consent to such therapy for the child, both before and after SB 107. If the district court modifies the October 2021 order regarding medical care—or attempts to acquiesce in a California court's desire to do so—Father could seek immediate appellate relief.[5] That case might raise important questions about whether medically or surgically "transitioning" a child against the wishes of a fit parent can ever be in the child's best interests.[6] This is not that case.

---

[5] This Court makes every effort to consider pro se filings with rigor and with leniency. Apart from its misunderstanding of the law, Father's petition suffers from other procedural and substantive defects that would make granting it problematic. Given the complexity of this case's history and the sensitivity and novelty of many of the legal arguments involved, Father would be well-advised to seek competent counsel if he again pursues relief in this Court.

[6] With regard to these children's best interests, I find it troubling that Father has refused to see either of his children in over a year despite abundant opportunities to do so.

I respectfully concur in the denial of the petition for writ of mandamus.

_____
James D. Blacklock
Justice

**OPINION FILED:** December 30, 2022