Filed 3/1/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| KEVIN LUNSTED, | |
| Petitioner, | E081770 |
| v. | (Super.Ct.No. RIF1502599) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. John D. Molloy, Judge. Petition granted.

Steven L. Harmon, Public Defender and William A. Meronek, Deputy Public Defender, for Petitioner.

Michael A. Hestrin, District Attorney and W. Matthew Murray, Deputy District Attorney, for Real Party in Interest.

No appearance for Respondent.

Defendant Kevin Lunsted seeks a writ of mandate compelling the trial court to grant his motion to quash the People's subpoena duces tecum seeking his case file (commonly referred to as a "c-file") from the California Department of Corrections and Rehabilitation (CDCR). The People requested the c-file to prepare for Lunsted's resentencing hearing under Penal Code section 1172.75, and Lunsted moved to quash, arguing that the request for his entire c-file was overbroad and sought privileged and immaterial medical and mental health records. (Unlabeled statutory citations refer to the Penal Code.) The trial court denied the motion on the ground that the c-file was "likely to have information that is germane to" the resentencing hearing, because section 1172.75 allows the court to consider a wide range of postconviction evidence when selecting Lunsted's new sentence.

In his writ petition, Lunsted argues that the trial court abused its discretion by failing to apply the factors set out in *Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329 (*Facebook*) to determine whether the People made a sufficient showing of good cause to defeat his motion to quash. We agree and therefore grant the petition and remand for the court to reconsider the motion to quash under the correct legal standard. We publish this opinion to clarify that *Facebook* applies to subpoenas issued not only by the defense but also by the prosecution.

2

BACKGROUND

I.      *Lunsted Becomes Eligible for Resentencing*

In 2016, Lunsted was convicted of one count of attempted rape and one count of aggravated assault with an enhancement for inflicting great bodily injury. He received a total sentence of 17 years, which included one year for a prior prison term enhancement under section 667.5, subdivision (b).

When Lunsted was sentenced, section 667.5, subdivision (b), required trial courts to impose a one-year enhancement for each true finding on an allegation that the defendant had served a separate prior prison term and had not remained free of custody for at least five years. (Former § 667.5, subd. (b).) However, as of January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) amended section 667.5, subdivision (b), to eliminate sentence enhancements for prior prison terms unless the prior terms were for sexually violent offenses. (Stats. 2019, ch. 590, § 1; *People v. Coddington* (2023) 96 Cal.App.5th 562, 567.) Two years later, Senate Bill No. 483 (2021-2022 Reg. Sess.) added section 1172.75 (formerly section 1171.1) to provide a resentencing procedure that extends the prohibition on prior prison term enhancements to all persons currently incarcerated in jail or prison. (Stats. 2021, ch. 728, § 3.)

That procedure does not begin with the filing of a petition by a defendant who is seeking relief. (Cf. §§ 1170.126, 1170.18, 1172.6, subds. (a)-(c) [requiring the defendant to file a petition that sets forth a prima facie case for relief].) Instead, section 1172.75 requires the Secretary of CDCR to (i) identify "those persons in their custody currently

3

serving a term for a judgment that includes" a now-invalid prior prison term enhancement and (ii) provide certain information about those individuals "to the sentencing court that imposed the enhancement." (§ 1172.75, subd. (b).) Upon confirming that a defendant is entitled to resentencing (i.e., is serving a sentence that includes a now-invalid prior prison term enhancement), the trial court must strike the invalid enhancement and apply "any other changes in law that reduce sentences." (§ 1172.75, subds. (a), (d)(2).) When selecting a new sentence, the court "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

In October 2022, CDCR identified Lunsted as eligible for resentencing under the statute, and the trial court confirmed his eligibility and scheduled a resentencing hearing.

II. *The People's Subpoena and Lunsted's Motion to Quash*

In preparation for Lunsted's resentencing hearing, the People issued a subpoena duces tecum to CDCR that sought his "C-file . . . including but not limited to all disciplinary violations, laudatory chronological reports, as well as positive programming, from . . . approximately 03/01/2016 to the present."[1] CDCR immediately complied with

---

[1] According to CDCR's operations manual, the c-file "is the central depository for copies of all documents, correspondence, and reports pertaining to each inmate," and it is divided into the following 11 sections: (1) "Case Summary Section"; (2) "Legal

*[footnote continued on next page]*

4

the subpoena and delivered the c-file to the trial court.  Lunsted then objected to the

release of his c-file to the People and filed a motion to quash the subpoena.

In his briefing, Lunsted conceded that the People had good cause to seek his

disciplinary and rehabilitation records, but he argued that the subpoena was overbroad

because it also sought privileged and confidential medical and mental health records

before any issues concerning his physical or mental health had been raised.  In their

opposition, the People observed that in *Facebook* the California Supreme Court "adopted

and clarified a list of factors . . . for a trial court to consider when adjudicating a motion

to quash [a subpoena duces tecum] in a criminal case."  However, because the subpoena

in *Facebook* was issued by the defense, the People questioned whether the factors applied

to prosecution subpoenas.  Assuming that the factors did apply to prosecution subpoenas,

the People argued that they had good cause to seek Lunsted's entire c-file, because a

defendant's "conduct in prison" is "one of the most important factors a court must

consider for the purposes of resentencing."

At the hearing on Lunsted's motion, the trial court announced that its tentative

ruling was to deny the motion because good cause was "pretty easy to satisfy," given "the

broad aims and the broad factors set forth in [section] 1172.75."  The court explained that

Documents Section"; (3) "Classification Section"; (4) "Disciplinary Section"; (5)
"General Chronos Section"; (6) "Miscellaneous Section" (for miscellaneous
correspondence and various CDCR forms); (7) "Detainers Section"; (8) "Parole Section";
(9) "BPT and NAEA Section" (for files related to proceedings before the Board of Prison
Terms and the Narcotic Addiction Evaluation Authority, including "Board generated
psychiatric reports"); (10) "Microfiche Section"; and (11) "Confidential Section" (for
"material designated as confidential").  (Cal. Dept. of Corrections and Rehabilitation,
Operations Manual (2023) §§ 72030.3, 72030.4.1-72030.4.11, pp. 608-609.)

a "line-item-by-line-item discussion" of the contents of the c-file would be unnecessary because "no matter how that debate goes, at the end of the day I have to review it in-camera and decide whether it's truly releaseable or not."

Defense counsel asked the court to reconsider its tentative ruling. She argued that the subpoena was overbroad because Lunsted's c-file contained "extensive data far and above what should be included for an 1172.75 hearing." She argued that because neither the defense nor the prosecution had put Lunsted's physical and mental condition at issue, the People did not have good cause to seek anything more than his discipline and rehabilitation records.

The prosecutor argued that the court "should find that the *Facebook* factors cut in our favor," because section 1172.75 gives the court "an unbelievable amount of authority to consider different aspects of [Lunsted's] life in order to make a resentencing decision." To illustrate the breadth of issues that might come up at the resentencing hearing, the prosecutor pointed out that the statute required the court to reconsider Lunsted's entire sentence and apply any other changes in the law that reduce sentences. It was conceivable, therefore, that Lunsted's mental and physical condition would become relevant if the court were to consider striking his prior strike under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 or to consider dismissing an enhancement in the interests of justice under recently amended section 1385.

Defense counsel responded that the prosecution's good cause showing was insufficient because it was not based on the issues the prosecution anticipated raising but

6

was instead based on speculation about what relief Lunsted might seek beyond the striking of his now-invalid one-year prior prison term enhancement. She argued that because Lunsted had not yet raised any issues related to his physical or mental condition, the "best practice" would be for the People to revise the subpoena to remove the phrase "including but not limited to," so that their request did not encompass privileged and immaterial medical and mental health records.

At the conclusion of the parties' arguments, the trial court stated that it was "convinced that there is good cause for the issuance of [the] subpoena." The court explained that while it agreed with defense counsel "about what a better practice is or could be" for tailoring a request for an inmate's prison records in connection with a section 1172.75 resentencing hearing, "what informs a decision about whether the subpoena was appropriately issued" is whether the requested documents are "likely to have information that is germane to the resentencing procedures." The court concluded that Lunsted's c-file was likely to contain information that is "absolutely germane," because section 1172.75 permitted the court to consider a broad range of postconviction evidence when selecting his new sentence.

The court informed defense counsel that she could request an in camera review of the c-file. The court explained that if it were asked to conduct such a review, it would most likely release any records related to discipline and rehabilitation but adopt a more protective approach to records containing medical and psychological information. The court said that it would review any medical records for relevance and "could see . . .

7

waiting until mental health had been placed in issue before ordering a psychologist's notes." Acknowledging that its good cause analysis required it to review potentially hundreds of pages of Lunsted's records for relevance and privilege, the court observed, "If I got to make the world as I want it, these subpoenas would be just for the discipline records and programming records because it makes it really simple for me, and I don't really want to go through even a hundred pages if I don't have to." The court then denied the motion to quash and granted defense counsel's request for an in camera review of the c-file.

Lunsted filed a timely petition for a writ of mandate challenging the trial court's denial of his motion to quash and requesting a stay. We granted the stay request and issued an order to show cause.

## DISCUSSION

Lunsted does not deny that the People demonstrated good cause to seek his disciplinary and rehabilitation records. He argues that the trial court applied an incorrect standard for determining whether the People demonstrated good cause to seek his *entire* c-file, which includes what he claims are privileged and thus far immaterial medical and mental health records. Specifically, Lunsted contends that the court abused its discretion by failing to apply the *Facebook* factors to that inquiry. We agree.

I.     *Standard of Review*

A petition for writ of mandate is an appropriate means for challenging a denial of a motion to quash. (See generally *Facebook*, *supra*, 10 Cal.5th 329 [reviewing by way of

8

writ proceeding an order denying a motion to quash a criminal defense subpoena]; see also *People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 ["a trial court's ruling on a discovery motion 'will be overturned upon a prerogative writ if there is no substantial basis for the manner in which trial court discretion was exercised or if the trial court applied a patently improper standard of decision'"].)  "We review a ruling on a motion to quash, like other discovery orders, for abuse of discretion." (*Facebook*, *supra*, 10 Cal.5th at p. 359.)  A trial court abuses its discretion when it bases its ruling on the wrong legal standard.  (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746 (*Humberto S.*).)

II.     *The* Facebook *Factors*

"'Documents and records in the possession of nonparty witnesses and government agencies other than the agents or employees of the prosecutor are obtainable by subpoena duces tecum.'"  (*Kling v. Superior Court* (2010) 50 Cal.4th 1068, 1074 (*Kling*).)  Section 1326 governs the use of such subpoenas in any "criminal action," including sentencing hearings.  (See § 683 [defining "criminal action" as the "proceeding by which a party charged with a public offense is accused and brought to trial and punishment"]; see also *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1297 [resentencing hearing under section 1170.126 is a "criminal action"].)

Section 1326 authorizes either party in a criminal action to issue a subpoena duces tecum to a third party.  (§ 1326, subd. (a).)  However, "unlike civil subpoenas, there is no statutory requirement of a "'good cause'" affidavit before such a subpoena may be

9

issued." (*Facebook*, *supra*, 10 Cal.5th at pp. 343-344.)  That is because the issuance of the subpoena is "purely a ministerial act" and does not entitle the requesting party to obtain access to the records.  (*Kling*, *supra*, 50 Cal.4th at p. 1074.)  Instead, section 1326, subdivision (d), "provides for delivery of the materials to the clerk of the court."  (*Kling*, at p. 1074.)  "This restriction maintains the court's control over the discovery process." (*Ibid.*)  If the opposing party or the third party whose documents were requested moves to quash the subpoena, however, then the requesting party must "establish good cause to acquire the subpoenaed records."  (*Facebook*, *supra*, 10 Cal.5th at p. 344 [faced with a motion to quash, the requesting party "must show 'some cause for discovery other than "a mere desire for the benefit of all information"'"].)

If the requesting party cannot demonstrate good cause, then the trial court must grant the motion to quash.  (*Facebook*, *supra*, 10 Cal.5th at p. 357, fn. 14.)  If the requesting party does make a sufficient showing of good cause, then the opposing party may request that the trial court conduct an in camera review to "'determine whether or not the [requesting party] is entitled to receive the documents.'"  (*Id.* at p. 344, citing § 1326, subd. (c).)

In *Facebook*, our Supreme Court explained how "a trial court assess[es] good cause to enforce a subpoena duces tecum in the face of a motion to quash."  (*Facebook*, *supra*, 10 Cal.5th at p. 344.)  The defendant, who had been charged with attempted murder, subpoenaed the social media company Facebook, seeking the victim's private posts and messages.  Facebook moved to quash the subpoena, and the defendant argued

that the records were necessary to impeach the victim's character and to show that the defendant acted in self-defense. (*Id.* at p. 338.) The trial court concluded that the subpoena was supported by good cause and denied the motion. (*Id.* at p. 355.)

Our Supreme Court granted review and held that the trial court abused its discretion "by failing to apply the seven-factor *Alhambra* test," so called because it was first articulated in *City of Alhambra v. Superior Court* (1988) 205 Cal.App.3d 1118. (*Facebook*, *supra*, 10 Cal.5th at pp. 342, 359.) The Court explained that the trial court's "misstep was understandable" because, since *Alhambra*, there had been "surprisingly little guidance in the case law and secondary literature with regard to the appropriate inquiry," and because the Court had not yet "articulated a clear roadmap or set of factors to be applied by trial courts." (*Facebook*, at p. 337.)

The Court held that there are "seven factors that a trial court should explicitly consider and balance in ruling on a motion to quash a subpoena duces tecum directed to a third party." (*Facebook*, *supra*, 10 Cal.5th at p. 329.) Those factors are: (1) whether the requesting party has articulated a "plausible justification" for obtaining the requested material from the third party; (2) whether the requested material is "adequately described and not overly broad"; (3) whether the material is "reasonably available" to the requesting party from other sources; (4) whether production of the material would "violate a third party's 'confidentiality or privacy rights' or intrude upon 'any protected governmental interest'"; (5) whether the request is "timely"; (6) whether the "time required to produce the requested information" would "unreasonabl[y] delay" the

11

proceedings; and (7) whether the request places an "unreasonable burden" on the third party. (*Id.* at pp. 345-347.)

The Court explained that the plausible justification factor is the "most significant" consideration but is nevertheless insufficient on its own to justify the release of documents subpoenaed from a third party. (*Facebook*, *supra*, 10 Cal.5th at p. 345, fn. 6; see also *ibid.* [the plausible justification factor "is included within the overall good-cause inquiry and is not an alternative to that inquiry"].) To demonstrate a plausible justification for seeking a particular document or category of documents, the requesting party must "present[] specific facts demonstrating" that the material is admissible (or might lead to admissible evidence) and "will reasonably '"assist"'" the party in preparing its case. (*Id.* at p. 345.) When assessing the strength of the requesting party's showing, the trial court should "measure" the requesting party's stated justification for acquiring the information "against the legal claims . . . pursuant to which the [party] urged the information would be relevant." (*Id.* at p. 349.) The purpose of the plausible justification factor is to ensure that the subpoena does not amount to an "impermissible '"fishing expedition."'" (*Id*. at p. 345.)

Finally, the Court stated that because "a trial court ruling on a motion to quash . . . should bear in mind the need to make a record that will facilitate appellate review," the court "should, at a minimum, articulate orally, and have memorialized in the reporter's transcript, its consideration of the relevant factors." (*Facebook*, *supra*, 10 Cal.5th at p. 358.)

12

III.    *Remand Is Necessary to Allow the Court to Consider the* Facebook *Factors*

We agree with Lunsted that, as in *Facebook,* nothing in the record "reflects that the court expressly considered and balanced" the seven required factors when assessing whether the People demonstrated good cause to seek the medical and mental health records in Lunsted's c-file.  (*Facebook*, *supra*, 10 Cal.5th at p. 356.)  Instead, the record demonstrates that the court based its ruling on a single consideration—whether the c-file, as a whole, was "likely to have information that is germane to the resentencing procedures [in section 1172.75]."  Because that is not the correct legal standard, we conclude that remand is necessary to allow the court to reconsider the motion to quash in light of the *Facebook* factors.  (See *Facebook*, *supra*, 10 Cal.5th at p. 359 [remanding to "afford the trial court an opportunity to consider the good cause issue anew"]; see also *Humberto S.*, *supra*, 43 Cal.4th at p. 742 [remanding because "the trial court's decision rest[ed] on an error of law"].)

The People raise several arguments for denying the petition, but we find none of them persuasive.  First, the People suggest that the *Facebook* factors "may not apply" to prosecution subpoenas, because *Facebook* concerned a subpoena issued by the defense.  As a general matter, the procedures governing criminal discovery were designed "to be equal and reciprocal," and the laws governing third party subpoenas are no exception.  (*Hines v. Superior Court* (1993) 20 Cal.App.4th 1818, 1822).  As our Supreme Court explained in *Kling*, the "provisions concerning third party subpoenas apply equally to the People and the defense."  (*Kling*, *supra*, 50 Cal.4th at p. 1075.)  The People do not

13

articulate any reason why *Facebook* should constitute an exception to that general rule, and we are aware of none. Moreover, *Facebook*'s holding is stated in general terms that are not specific to the defense. (See *Facebook*, *supra*, 10 Cal.5th at p. 329 [listing "seven factors that a trial court should explicitly consider and balance in ruling on a motion to quash a subpoena duces tecum directed to a third party"]; see also *id.* at p. 345, fn. 6 [explaining that the factors constitute "a global inquiry into whether there is good cause for a criminal subpoena"].) The criminal discovery treatise that *Facebook* cites with approval likewise discusses the factors in general terms, not limiting them to defense subpoenas. (See Hoffstadt, California Criminal Discovery (6th ed. 2022) section 13.03, pp. 658-660 [using the term "subpoenaing party" throughout its discussion to refer to the party bearing the burden of demonstrating good cause].) And the factors themselves—such as overbreadth, timeliness, confidentiality, and privacy rights—appear to be reasonable considerations to take into account on a motion to quash a subpoena propounded by any party. For all of these reasons, we reject the People's suggestion that *Facebook* applies only to defense subpoenas.

Second, the People argue that the court "must have" considered the *Facebook* factors, because the parties' briefs and oral arguments were based on those factors. We disagree. The presumption that a trial court "had a proper basis for a particular finding or order" applies only when "the record is silent" as to how the court reached its decision. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) The presumption does not apply here,

14

because the record is not silent. The court's statements at the hearing demonstrate that it applied an incorrect standard. (*Ibid.*)

Third, the People argue that the record "unquestionably favor[s] affirming" the trial court's ruling, regardless of whether the court actually considered the *Facebook* factors. Again, we disagree. "If the record affirmatively shows the trial court misunderstood the proper scope of its discretion, remand to the trial court is required to permit that court to exercise *informed* discretion with awareness of the full scope of its discretion and applicable law." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 16.) But even if remand were not required, we would conclude, as the Supreme Court did in *Facebook*, that remand is the more "prudent" course. (*Facebook*, *supra*, 10 Cal.5th at p. 359.) Because the trial court appeared to find defense counsel's argument that the subpoena should have been more narrowly tailored at least somewhat persuasive, we cannot conclude that the record "clearly indicate[s]" that the court would have reached the same conclusion had it applied the *Facebook* factors. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.)

Fourth and finally, the People contend that "section 1326 does not require separate [subpoenas] for different documents in the possession of the same custodian of records," so it was proper to propound a single subpoena for the entire c-file rather than multiple subpoenas for the c-file's component parts. The People conclude that because multiple subpoenas are not required, multiple good cause showings with respect to the different parts of the c-file likewise cannot be required. Instead, the People apparently contend

15

that as long as they are "entitled to much of the c-file," the motion to quash should be denied in its entirety.

We disagree. It is true that section 1326 does not require separate subpoenas for different documents in the possession of the same custodian of records. But it does not follow that a single, undifferentiated showing of good cause for acquiring "much of" the documents in the custodian's possession is sufficient to defeat a motion to quash. *Facebook* requires the trial court to consider, among other things, whether the requesting party has "adequately described" the material in a way that is not "overly broad" and has demonstrated with specific facts how the material will be relevant to matters at issue in the proceedings. (*Facebook*, *supra*, 10 Cal.5th at pp. 346, 349.) Thus, for example, a sufficient showing of good cause for medical and mental health records will be different from a good cause showing for disciplinary records or records of rehabilitative programming. *Facebook* does not allow the People's proposed shortcut of showing good cause for acquiring "much of" the evidence in the custodian's possession and leaving it at that.

For all of these reasons, we grant Lunsted's petition and direct the court to reconsider the motion to quash under *Facebook*.

DISPOSITION

Let a writ of mandate issue, directing the superior court to vacate its order denying Lunsted's motion to quash and to reconsider the motion in a manner consistent with this

16

opinion.  The previously ordered stay is vacated upon issuance of the remittitur.  (Cal.

Rules of Court, rule 8.490(d).)

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.